NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0601n.06

No. 08-5495

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 10, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| JOHN DOUGLAS WHELAN, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE:    SUTTON and McKEAGUE, Circuit Judges; JONKER, District Judge.[*]

**Jonker, District Judge**. John Douglas Whelan, Jr. appeals the sentence entered following his guilty plea to criminal charges involving distribution of OxyContin pills. Mr. Whelan contends the district court erred in determining the number of OxyContin pills attributable to him, and as a result erred in calculating his base offense level. Mr. Whelan further contends that the sentence the district court imposed was substantively unreasonable.

**Factual and Procedural Background**

In August of 2007, an informant told law enforcement officials that he had sold OxyContin tablets to Mr. Whelan on a regular basis for the past twelve to eighteen months. (R.27: Presentence Investigation Report ("PSR") at ¶ 11.) The informant stated that he usually sold between three and four hundred OxyContin tablets to Mr. Whelan every two weeks. (*Id*.) The informant added that

---

[*] The Honorable Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

Mr. Whelan's largest single purchase of OxyContin tablets from him was for 900 tablets. (*Id.*) The same informant later told law enforcement officials that since approximately July, 2006, he had sold Mr. Whelan an average of 200 to 300 OxyContin tablets per week at an average of $33.00 per tablet, and that over the course of their relationship, Mr. Whelan had paid the informant over $200,000 in cash. (*Id.* at ¶ 12.) Working with law enforcement, the informant contacted Mr. Whelan and arranged a sale of 1,000 OxyContin tablets. (*Id.* at ¶¶ 14-15.) When Mr. Whelan arrived to make the purchase, law enforcement officials arrested him and found $33,940 in cash in his possession. (*Id.* at ¶ 16.) Mr. Whelan admitted that he had come with cash to purchase 1,000 OxyContin tablets. (*Id.* at ¶ 17.) Mr. Whelan also admitted that he had in the past made five other purchases of OxyContin tablets, each time purchasing 500 80mg OxyContin tablets. (*Id.*)

On September 13, 2007, a federal grand jury indicted Mr. Whelan on three criminal counts. (R. 10: Indictment.) Count One charged conspiracy to distribute a quantity of pills containing a detectable amount of oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*) Count 2 charged attempt to possess with the intent to distribute a quantity of pills containing a detectable amount of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*) Count 3 was a count for forfeiture under 21 U.S.C. § 853. Mr. Whelan pleaded guilty to all counts without a plea agreement, and judgment against him was entered on February 27, 2008. (R. 24: Judgment.)

The PSR notes that Mr. Whelan's own admissions indicate that he sought to purchase 1,000 OxyContin tablets the day of his arrest and that he had previously purchased 2,500 OxyContin tablets. (R. 27: PSR, ¶ 18.) Based on those admissions alone, Mr. Whelan would be held accountable for 3,500 80mg OxyContin tablets, with a marijuana equivalency of 1,876 kilograms

of marijuana. (*Id.*) The PSR points out further, though, that the informant's statements indicated that Mr. Whelan had purchased OxyContin from the informant over an extended period of time and that Mr. Whelan had provided the informant with approximately $200,000 in cash during the conspiracy, at $33.00 per tablet. (*Id.*) Using the calculation it describes as most beneficial to Mr. Whelan, the PSR divides $200,000 by 33 and determines that Mr. Whelan in the past purchased approximately 6,060 80mg OxyContin tablets. (*Id.*) Adding the 1,000 tablets Mr. Whelan attempted to purchase on the day of his arrest to the 6,060, the PSR concludes that Mr. Whelan is accountable for 7,060 80mg OxyContin tablets, with a marijuana equivalency of 3,784.16 kilograms. (*Id.*)

At sentencing, Mr. Whelan objected to the number of OxyContin tablets the PSR attributed to him in determining his base offense level. (R. 32: Transcript, at 4.) In particular, he objected to the PSR's reliance on the statement by the informant that he had received over $200,000 over the past twelve to eighteen months from Mr. Whelan. (*Id.*) Mr. Whelan argued that only the 3,500 tablets to which he had admitted should be considered in determining his base offense level. (*Id.* at 14.) Mr. Whelan did not object to the formula the PSR applied to calculate the number of tablets. (*Id.* at 4.) Nor did Mr. Whelan object to any of the facts stated in the PSR. (*Id.* at 7–8, 10–11.)

The district judge carefully considered Mr. Whelan's objection to the number of OxyContin tablets attributed to him and the resulting base offense level. (*Id.* at 12–16.) The judge observed that in determining the applicable offense level, courts consider, among other things, "all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction," including "relevant conduct of additional drug quantities that are not charged in the indictment." (*Id.* at 13 (citing U.S.S.G. § 1(B)1.3(a)).) The judge explained that "[b]ecause there

was no seizure of actual drugs at issue, I may, in considering the appropriate base offense level, approximate the amount and the price of those drugs using similar transactions that have been conducted by the defendant." (*Id.* (citing U.S.S.G. § 2(D)1.1, cmt. n. 12).) Weighing various factors, including without limitation that (1) Mr. Whelan had agreed to forfeit proceeds of drug trafficking activity for a total of $250,000; (2) the informant stated that he had received $200,000 or more over the course of the year; (3) the forfeiture count included $33,940 in cash found in Mr. Whelan's possession on his trip to purchase 1,000 tablets; and (4) the informant stated that he charged $33 per pill, the judge found it reasonable to conclude that the approximate price per pill was $33. (*Id.* at 14–15.) The judge found it likely that Mr. Whelan had purchased during the conspiracy at least 6,060 pills, including the 2,500 tablets for which Mr. Whelan accepted responsibility. (*Id.* at 15.) Adding the 1,000 tablets Mr. Whelan intended to purchase the day of his arrest, the judge ruled that "[t]he quantity attributable to Mr. Whelan will be 7,060, 80 milligram oxycodone pills." (*Id.* at 16.) The judge thus overruled Mr. Whelan's objection. (*Id.*) Further, the judge explicitly accepted and adopted the findings in the PSR, including the guideline calculations. (*Id.* at 17.) After discussing the sentencing factors and giving the parties an opportunity to address the court, the judge imposed a sentence of 152 months on each of Counts I and II, to be served concurrently. (*Id.* at 19–37.) The sentence fell within the middle of the advisory Guidelines range, which stretched from 135 to 168 months. (*Id.* at 21.)

**Analysis**

1.    *The district court did not clearly err in calculating Mr. Whelan's base Guidelines offense level.*

A clearly erroneous standard of review applies to the district court's factual findings. *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). Findings of facts crucial to the determination of a defendant's base offense level must be made by a preponderance of the evidence. *United States v. Walton*, 908 F.2d 1289, 1301–02 (6th Cir. 1990). In making such factual findings, courts consider, among other things, "all acts . . . committed . . . by the defendant . . . during the commission of the offense of conviction [or] in preparation for that offense." U.S.S.G. § 1B1.3(a)(1)(A)-(B). If no drugs have actually been seized in connection with a drug offense, the sentencing court must approximate the quantity of drugs attributable to the defendant. *Id.* at § 2D1.1 cmt. n.12; *accord Walton*, 908 F.2d at 1301–02. "[H]ere also a preponderance of the evidence must support the estimate." *Walton*, 908 F.2d at 1301–02. A court "choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, . . . must err on the side of caution." *Id.* at 1302. "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by competent evidence in the record." *United States v. Edward Lee Mahaffey*, 53 F.3d 128, 132 (6th Cir. 1995) (quoting *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir. 1993) (abrogated on other grounds by Pub. L. No. 106-310, §§ 3601-3673, 114 Stat. 1102, 1227-46 (2000)).

The Court sees no clear error in the district court's approximation of the quantity of drugs attributable to Mr. Whelan. Mr. Whelan raised no objection to the facts set forth in the PSR, and the district court was entitled to accept those facts as true. FED. R. CRIM. P. 32(i)(3)(A); *accord United States v. Carter*, 355 F.3d 920, 925-26 (6th Cir. 2004). Competent evidence supports the district court's finding that Mr. Whelan was responsible for 7,060 OxyContin tablets. Mr. Whelan pleaded guilty to a criminal forfeiture of $250,000 representing proceeds from the drug trafficking activities with which he was charged. (R. 24: Judgment.) The informant advised law enforcement that he had received over $200,000 in cash from Mr. Whelan. (R. 27: PSR, at ¶ 12.) The informant stated that on average, he sold Mr. Whelan OxyContin tablets for $33.00 each. (*Id.* at ¶ 12.) This price per pill is consistent with the amount of cash, over $33,000, Mr. Whelan had brought with him to pay for 1,000 tablets. (*See id.* at ¶ 16.) Mr. Whelan did not present any evidence to contradict the informant's statement that Mr. Whelan paid him over $200,000 over the course of more than a year, and no evidence to contradict the informant's statement that Mr. Whelan typically paid him $33 per OxyContin tablet. Indeed, Mr. Whelan raised no objection to the facts in the PSR.

In calculating the quantity of OxyContin attributable to Mr. Whelan, the district court actually erred on the side of caution and gave the defendant the benefit of the doubt. *See Walton*, 908 F.2d at 1301–02. Through his guilty plea, Mr. Whelan acknowledged $250,000 in proceeds related to the drug offenses with which he was charged. However, the Court did not use this number in calculating the quantity attributable to Mr. Whelan, but rather used the lower $200,000 figure the informant had provided. Similarly, the district court did not rely on the informant's estimates of the number of OxyContin tablets Mr. Whelan had purchased from him over the course of the conspiracy to which

Mr. Whelan pleaded guilty. At one point, the informant stated that Mr. Whelan had purchased 300 to 400 OxyContin tablets from him every two weeks for over a year. Had the district court relied on that statement in making its calculations, it would have found, at a minimum, 7,800 OxyContin tablets (300 x 26) attributable to the defendant, plus an additional 1,000 tablets Mr. Whelan had intended to purchase the day of his arrest. At another point, the informant stated that Mr. Whelan had purchased approximately 200 to 300 OxyContin tablets per week for over a year. Had the district court relied on this statement, it would have attributed at least 10,400 OxyContin tablets (200 x 52) to the defendant. Instead, the trial court opted for the more conservative and fully supported calculation.

>   2.    *The district court's sentence of Mr. Whelan was reasonable.*

The Court reviews the district court's sentencing decision for reasonableness. *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007). "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review." *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46, 47 (2007)). "[D]istrict courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them." *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (*en banc*). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

A review for reasonableness has both substantive and procedural components. *Carter*, 510 F.3d at 600 (citing *Gall*, 552 U.S. at 49-51). Mr. Whelan does not challenge the procedural aspects

of his sentence, but argues only that his sentence is substantively unreasonable. (Appellant's Br. at 14.) The Court considers the totality of the circumstances in reviewing the substantive reasonableness of a sentence. *Gall*, 552 U.S. at 51. A rebuttable presumption of reasonableness applies to sentences properly calculated under the Guidelines. *Vonner*, 516 F.3d at 389-90; *see also Rita v. United States*, 551 U.S. 338, 347 (2007) (upholding presumption of reasonableness for within-guidelines sentences).

Mr. Whelan's claim that his sentence is substantively unreasonable fails. The sentence was within the properly calculated Guidelines range, entitling the sentence to a presumption of reasonableness. *Vonner*, 516 F.3d at 389-90. Mr. Whelan does not argue that the district court imposed the sentence arbitrarily, based the sentence on impermissible factors, failed to consider any pertinent factor under 18 U.S.C. § 3553(a), or gave an "unreasonable amount of weight to a pertinent factor." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (listing situations in which a sentence is considered substantively unreasonable) (quotation omitted). Mr. Whelan argues simply that although the district court reviewed the appropriate sentencing factors under 18 U.S.C. § 3553(a), the district court should have weighed the factors differently and imposed a shorter sentence. (Appellant's Br. at 14–15.) Mr. Whelan presents no reasons why the district court should have weighed the factors differently. Mr. Whelan has not rebutted the presumption of reasonableness of the length of the sentence and has shown no abuse of discretion on the part of the district court. The sentence of the district court was reasonable.

**Conclusion**

For these reasons, we **AFFIRM**.