NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0083n.06

**Case No. 13-1152**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 03, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| JIMMY RAY VALENTINE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge. Convicted of conspiring to purchase and distribute large amounts of crack cocaine in 2000, Jimmy Ray Valentine moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) after the Sentencing Commission amended the sentencing guidelines for such offenses in 2007. Valentine appeals the district court's judgment finding Valentine accountable for at least 8.4 kilograms of crack cocaine, rendering him ineligible for a reduction. Because ample evidence supports the district court's finding, we affirm.

I.

In 2000, a jury convicted Valentine and several codefendants of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. §§ 846

and 841(a). At trial, cooperating co-conspirators testified that the conspiracy involved a total of 50 to 75 kilograms of crack cocaine, with Valentine playing a key role in coordinating large crack cocaine purchases.

Valentine's presentence report recommended, consistent with the then-guidelines, a base-offense level of 38 because his criminal activity involved more than 1.5 kilograms of cocaine base—the highest drug-quantity threshold at that time. Judge Richard Enslen overruled Valentine's objection to this quantity, noting that "witnesses testified that the total amount of crack purchased by the defendant and his co-conspirators . . . was somewhere between 50 kilograms and 60 kilograms, a great deal more than 1.5."

Judge Enslen also imposed a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c). The enhancement resulted in an offense level of 40 and a guidelines range of 292 to 365 months, and the court sentenced Valentine to 292 months. Valentine appealed on a number of grounds, and we affirmed, observing that "[t]he amount of drugs involved in the conspiracy was conservatively estimated at between 50 and 75 kilograms of crack." *United States v. Valentine* (*Valentine I*), 70 F. App'x 314, 331 (6th Cir. 2003). Valentine also sought post-conviction relief, which the district court denied.

After the Sentencing Commission increased the crack-cocaine threshold for Valentine's base-level offense from 1.5 kilograms to 4.5 kilograms, Valentine moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). Judge Robert Jonker, who replaced Judge Enslen when Judge Enslen assumed senior status, granted Valentine's motion, declining to make new factual findings and holding that "it would be functionally inconsistent—if not literally inconsistent—

for this Court to increase [Judge Enslen's] threshold finding [of at least 1.5 kilograms]." On appeal, we reversed and remanded, concluding that the district court's decision not to conduct further fact-finding violated circuit precedent. *United States v. Valentine* (*Valentine II*), 694 F.3d 665, 675 (6th Cir. 2012). In doing so, we noted that "credible evidence in the record [shows] that [Valentine] was responsible for more than 4.5 kilograms of crack cocaine; . . . trial testimony and Judge Enslen's reflections on that testimony during [Valentine's] sentencing indicate that a preponderance of the evidence establishes that more than 4.5 kilograms . . . was attributable to . . . Valentine." *Id.* We therefore instructed the district court to "determine whether the record shows by a preponderance of the evidence that . . . Valentine was responsible for at least 4.5 kilograms of crack cocaine."[1] *Id.*

In 2011, before the district court took up his remanded case, Valentine filed another § 3582(c)(2) motion seeking to benefit from a second guidelines amendment that raised the crack-cocaine threshold for the highest base-offense level from 4.5 kilograms to 8.4 kilograms. Accordingly, the district court considered whether the amount of crack cocaine attributable to Valentine exceeded 8.4 kilograms. Assessing the record evidence heard by Judge Enslen, the court found that it did, as "[m]ultiple cooperating witnesses provided proffer information, trial testimony or both linking the conspiracy to years of drug trafficking involving quantities that easily exceeded 8.4 kilograms over the life of the conspiracy." The district court thus denied Valentine's motion, concluding that the record evidence "overwhelmingly supports a finding by

---

[1]Valentine's codefendants Kenneth, Corey, and Johnny Valentine also filed § 3582(c)(2) motions. Chief Judge Paul Maloney denied the motions, finding these defendants ineligible for a sentence reduction because a preponderance of the evidence established that the conspiracy involved more than 4.5 kilograms. On appeal, we affirmed. *Valentine II*, 694 F.3d at 673.

a preponderance of the evidence that [Valentine] is properly accountable for at least 8.4 kilograms of crack cocaine as part of the overall conspiracy."

II.

Valentine's appeal raises two related arguments. First, he contends that the district court failed to make a "cautious" drug-quantity estimate in crediting certain witness testimony regarding the purchase and distribution amounts. Second, he argues that the district court erred by attributing co-conspirators' conduct to him without making particularized findings concerning his scope-of-consent to the conspiracy and the foreseeability of his co-conspirators' relevant conduct, as required by the sentencing guidelines and our precedent. *See United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002). Neither argument warrants remand.

*A. The District Court's Drug-Quantity Finding*

We review a district court's drug-quantity determination for clear error. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). "An approximation by a court is not clearly erroneous if it is supported by competent evidence in the record." *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995). At a minimum, the district court's determination "must have some . . . indicium of reliability beyond mere allegation." *Id.* (internal quotation marks omitted).

Valentine insists that de novo review should apply because the district court's alleged failure to make a "cautious" approximation of the amount of crack cocaine attributable to him constitutes legal error. Though district courts must "err on the side of caution" when approximating drug quantities, *Hernandez*, 227 F.3d at 699, our cases confirm the clear-error

standard for drug-quantity findings. *Id.* at 697; *see also Valentine I*, 70 F. App'x at 329; *Valentine II*, 694 F.3d at 672. Unlike the cases Valentine cites,[2] the district court considered only factual questions, not legal issues, in arriving at its drug-quantity conclusions.

Valentine next points to six "distinct circumstances . . . warranting special caution" in this case: (1) scarce physical evidence supporting the district court's drug-quantity determination; (2) no defense admissions concerning drug quantities; (3) the government's cooperating witnesses' incentive to lie and exaggerate; (4) the district court's decision not to hold a hearing; (5) Valentine's lack of incentive at the original sentencing hearing to offer argument on the new, higher drug-quantity thresholds; and (6) the district court's alleged failure to respect Judge Enslen's credibility determinations.

But Valentine overstates the uniqueness of his case. Our precedent holds that "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Hernandez*, 227 F.3d at 697. Further, Valentine fails to specify what other evidence he would have presented if the higher drug-quantity thresholds had applied at his original sentencing. And Valentine cites no authority *requiring* a judge to examine new evidence in a § 3582(c)(2) proceeding when the parties have had a full opportunity to establish the record.

As for the district court's drug-quantity finding, competent evidence supports its

---

[2]Valentine points to cases presenting mixed questions of law and fact such as "whether there existed a substantial risk of harm to human life or the environment within the meaning of the [sentencing guidelines]," and whether "a defendant knowingly created a substantial risk of injury as set forth in the Guidelines." Unlike a district court's drug-quantity finding, these issues involve *both* a factual question—the nature of the conduct—*and* a legal question—the guidelines' applicability to the conduct.

determination that the conspiracy involved more than 8.4 kilograms. Indeed, in affirming the denial of Valentine's codefendants' § 3582(c)(2) motions, we noted that "this is a case where uncontradicted trial testimony indicated that *the conspiracy involved tens of kilograms of crack cocaine that were foreseeable to each [d]efendant as a member of the conspiracy*." *Valentine II*, 694 F.3d at 673 (emphasis added).

Valentine maintains that the district court clearly erred in relying on the testimony of Yusef Phillips, a co-conspirator who estimated that the conspiracy involved up to 75 kilograms of crack cocaine, and other witnesses who testified to smaller amounts. But to uphold the district court's finding, we need look only at Jerry Lee Butler's testimony as the conspiracy's primary supplier. Butler testified that he personally sold crack cocaine to Valentine three to five times, with the first transaction involving 8 to 10 ounces and the other transactions involving 1 to 2.5 kilograms each. More damning still, Butler testified that codefendant Corey Valentine traveled to Arkansas approximately twenty times, picking up 1.5 to 3 kilograms of crack cocaine on each occasion, with either Valentine or codefendant Kenneth Valentine coordinating the purchases. Judge Enslen expressly found Butler's testimony concerning these Arkansas transactions credible. Even a conservative sum of these estimates exceeds 30 kilograms, much more than the district court's finding of at least 8.4 kilograms.

Valentine marshals a number of arguments in the face of this evidence. First, he asks us to disregard much of his co-conspirators' testimony and focus only on the crack cocaine he personally purchased, using only witnesses' lowest drug-quantity estimates. But as the district court properly noted, Valentine may also be found accountable for the foreseeable actions of his co-conspirators. See U.S.S.G. § 1B1.3(a)(1)(B). These actions include the purchase of tens of

kilograms of crack cocaine from Butler, with Valentine playing a key organizing role.

Valentine next presses that *United States v. Battle*, 706 F.3d 1313 (10th Cir. 2013), compels reversal here, as the Tenth Circuit disapproved of the district court's calculation of a "theoretical maximum amount" of drugs. But the court reversed and remanded there because the district court *double-counted*. *Id.* at 1320-21. Unlike *Battle* no double counting occurred here.

Last, Valentine makes much of Judge Enslen's "misgivings about the total amount of crack, whether it is 50 to 60 kilos or not." These misgivings likely derive from Butler's trial testimony concerning the total amount of crack cocaine he sold to the Valentines. Specifically, Butler said, "[n]othing more than 50. Maybe less than 50. . . . I don't think it would be more than 50, but it could be. But . . . no more than 50." Regardless, these "misgivings" about how many *tens of kilograms* to attribute to the conspiracy fail to undermine the district court's relatively modest finding of at least 8.4 kilograms. Still, Valentine contends that because Judge Enslen expressed doubt about the total amount of crack cocaine Butler sold, Judge Enslen necessarily doubted Butler's testimony about the amounts involved in individual transactions. Not so. Admittedly, Judge Enslen's "misgivings" might give us pause had the district court found Valentine responsible for 40 or 50 kilograms. *See Valentine II*, 694 F.3d at 673 (reasoning that "[i]f the amended quantity threshold was 40 kilograms rather than 4.5 kilograms, Judge Maloney would have had a tougher question to answer."). But here, where substantial, competent, and uncontradicted evidence shows that the conspiracy involved much more than 8.4 kilograms, Valentine fails to show clear error.

B.      *Valentine's Scope of Consent and the Foreseeability of his Co-Conspirators' Actions*

Next, Valentine argues that the district court failed to make "particularized findings" required by U.S.S.G. § 1B1.3 and our decision in *Campbell*. The government responds that the district court *did* make the requisite findings when assessed together with Judge Enslen's earlier findings. We review a district court's interpretation of the sentencing guidelines de novo. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002).

When a defendant participates in a "jointly undertaken criminal activity," U.S.S.G. § 1B1.3(a)(1)(B) instructs courts to assess a defendant's base-offense level "on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Application Note Two further provides that "to determine the defendant's accountability for the conduct of others . . . , the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3 cmt. n. 2. In *Campbell*, the court construed § 1B1.3 to "require[] that the district court make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." *Campbell*, 279 F.3d at 400-01 (vacating the district court's sentence "because the court failed to make particularized findings with respect to the scope of [the defendant's] agreement") (emphasis removed).

Unlike the district court in *Campbell*, the district court here was not writing on a clean slate—Judge Enslen already made detailed findings concerning the scope of Valentine's consent and the foreseeability of his co-conspirators' conduct. These findings remained binding on the district court. *See Valentine II*, 694 F.3d at 673 (explaining that a court in a § 3582(c)(2)

proceeding may make new factual findings if they are "not inconsistent with the court's determination at [the defendant's] original sentencing"); *see also* U.S.S.G. § 1B1.10(b)(1) ("In determining whether . . . a [§ 3582(c)(2) sentence] reduction . . . is warranted, the court shall . . . substitute only the [amended sentencing guidelines] and shall leave all other guideline application decisions unaffected."). In particular, Judge Enslen found that "[Valentine] agreed with some of the co-conspirators to purchase large quantities of crack from Arkansas, bring that crack back to Michigan, [and] resell it [in] Benton Harbor," evidencing his scope of consent. And in imposing the two-point aggravating-role enhancement, Judge Enslen concluded that "[Valentine] made the initial contact with . . . Butler as a potential source of cocaine, . . . he pooled money with other co-conspirators to purchase that cocaine, [and] he negotiated and organized the terms and conditions of the purchases." The district court, responding to Valentine's argument that he should be found responsible only for crack cocaine he personally purchased, cross-referenced these earlier findings.

As to foreseeability, Judge Enslen found that "[t]rial testimony indicated [that Valentine] was involved in . . . three to five purchases in Arkansas of one to two kilograms per transaction," and other "multiple kilogram purchase[s] from Arkansas," concluding that "this quantity was either known by [Valentine] personally because he was there or was reasonably foreseeable to him." Consistent with these findings, the district court noted Valentine's leadership role and found Valentine "properly accountable for . . . all reasonably foreseeable acts . . . in furtherance of the . . . extensive crack cocaine distribution conspiracy."

These findings substantially comply with *Campbell*. *See United States v. Elias*, 107 F. App'x 634, 638 (6th Cir. 2004) (holding that the district court "substantially complied" with

*Campbell* despite the district court's failure to use the words "scope of the defendant's agreement"). Valentine clings to Judge Enslen's findings attributing "at least 1.5 kilograms" to him. But that finding, made under the drug-quantity thresholds then applicable, need not prevent the district court from making a higher drug-quantity finding later. *See Valentine II*, 694 F.3d at 670 ("[I]f the record [in a § 3582(c)(2) proceeding] does not reflect a specific quantity finding but rather a finding . . . that the defendant was responsible for 'at least' . . . a certain amount, then the modification court must make supplemental findings based on the available record."). Judge Enslen himself tied Valentine to the larger quantities in commenting, "witnesses testified that the total amount of crack purchased by [Valentine] and his co-conspirators . . . was somewhere between 50 kilograms and 60 kilograms, *a great deal more than 1.5*." (R. 436, Sent'g Tr. at 28-29) (emphasis added). These undisputed, earlier findings obviate the need for additional findings here. *Cf. United States v. Sullins*, 529 F. App'x 584, 589 (6th Cir. 2013) (holding that the district court substantially complied with *Campbell* such that remand "would be a waste of resources").

III.

For these reasons, we AFFIRM.