NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0280n.06

Case Nos. 15-2584/16-1064

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | May 19, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| KENNETH JEROME VALENTINE; | ) | MICHIGAN |
| JOHNNY VALENTINE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: MERRITT, GILMAN, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant Kenneth Valentine appeals the district court's denial of his motion for sentence modification under 18 U.S.C. § 3582(c)(2), arguing that the district court erred in refusing to devalue the drug estimates relevant to his sentence. Defendant Johnny Valentine likewise appeals the district court's denial of his § 3582(c)(2) motion on the ground that the district court improperly found that his involvement encompassed the entire conspiracy. Both cases have been consolidated on appeal.[1] For the reasons that follow, we **AFFIRM** the district court's denial of Defendants' motions for sentence modification.

---

[1] Defendants share the same last name, so we will refer to them by their first names for ease of reference.

I.

We have previously, on more than one occasion, had cause to review the facts underlying Defendants' convictions, so we do not rehash them in great detail here. Defendants were charged as part of a twelve-person indictment in 1999. The indictment charged Defendants with conspiracy to distribute and possess with intent to distribute cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(a). In February 2011, following a fourteen-day trial, Defendants were convicted.

At trial, testimony from several cooperating co-conspirators and confidential informants, including testimony from one Jerry Lee Butler and one Yusef Phillips, indicated that the conspiracy involved a total of fifty to seventy-five kilograms of crack cocaine. Kenneth's Presentence Report ("PSR") recommended a base offense level of 38, which, at the time, was the highest base offense level triggered by a drug quantity of at least 1.5 kilograms of crack cocaine. The PSR concluded that Kenneth was responsible for over fifty kilograms of crack cocaine. Kenneth objected to this drug quantity at the sentencing hearing, and the district court overruled his objection. Although expressing "misgivings" about the actual amount of crack cocaine involved in the conspiracy, the district court found, by a preponderance of the evidence, that the conspiracy involved at least 1.5 kilograms of crack cocaine, "and a great deal more." (R. 417, PageID # 1517–18.)

Likewise, Johnny's PSR recommended a base offense level of 38, concluding that Johnny was responsible for over 1.5 kilograms of crack cocaine, and that his involvement in the conspiracy involved pooling his money with the other Valentines to purchase "kilogram quantities of crack cocaine from Arkansas." (R. 1006, PageID # 4501.) The district court at sentencing again expressed its concern that the fifty-kilogram drug quantity was inflated, but

found that the conspiracy was responsible "for at least 1.5 kilograms of crack cocaine[] [a]nd that th[is] quantit[y was] reasonably foreseeable by [Johnny]." (R. 435, PageID # 1551–52.) Both Defendants were sentenced to a term of 292 months' imprisonment. We affirmed on appeal, noting particularly that "[t]he amount of drugs involved in the conspiracy was conservatively estimated at between 50 and 75 kilograms of crack." *United States v. Valentine (Valentine I)*, 70 F. App'x 314, 331 (6th Cir. 2003).

Following the 2007 amendment to the crack cocaine guidelines (Amendment 706), Defendants filed motions to reduce their sentence under § 3582(c)(2). The amendment raised the minimum drug quantity required to impose a base offense level of 38 from 1.5 kilograms to 4.5 kilograms. The district court conducted separate sentencing hearings for both Defendants, and again found that the conspiracy involved at least 4.5 kilograms of crack cocaine. Particularly, with respect to Johnny, the court found that he should be held responsible for the full amount of the conspiracy. On appeal, we affirmed the district court's determination that Defendants were ineligible for a sentencing reduction. *See United States v. Valentine (Valentine II)*, 694 F.3d 665 (6th Cir. 2012).[2]

In 2011, the Sentencing Commission again amended the crack cocaine guideline (Amendment 750) and raised the minimum drug quantity for a base offense level of 38 from 4.5 kilograms to 8.4 kilograms. Defendants again sought sentence modifications, and their motions were denied following a hearing by the district court. Following the 2014 amendment to the crack cocaine guidelines (Amendment 782) that again raised the minimum drug quantity from 8.4 kilograms to 25.2 kilograms, Defendants filed the motions for sentence reduction that

---

[2] In this appeal, we also considered the eligibility of co-defendants Corey Valentine and Jimmy Ray Valentine for a sentence reduction.

are the basis of this appeal.[3]  The district court denied Defendants' motions to reduce their sentence, finding that the conspiracy involved a drug quantity greater than the required 25.2 kilograms, and that this amount was reasonably attributable to both Defendants.

II.

A district court may modify or reduce the sentence of a "defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  In general, we review a district court's denial of a motion to modify a sentence under § 3582(c)(2) for abuse of discretion.  *United States v. Jackson*, 751 F.3d 707, 710 (6th Cir. 2014).  However, where the district court's decision "rests on its determination that the defendant is ineligible for a sentence reduction, we review *de novo* the district court's eligibility determination," and review any factual findings made for clear error.  *Valentine II*, 694 F.3d at 669.  "A factual finding is clearly erroneous when, on the entire evidence, we are 'left with a definite and firm conviction that a mistake has been committed.'"  *Id.* at 672 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

A.      *District Court's Drug Quantity Determination*

The main challenge to the district court's drug-quantity finding in this appeal comes from Kenneth.  In particular, Kenneth argues that the district court erred by giving no weight to the initial sentencing court's misgivings about the drug quantity testified to at trial, and failed to devalue the amounts claimed by the Government.

At Kenneth's original sentencing hearing, the district judge, Judge Enslen, expressed his reservation at accepting the fifty to seventy-five kilogram estimate, stating that he had "serious

---

[3] Kenneth's motion to reconsider the denial of his motion under Amendment 750 was consolidated with his motion under Amendment 782.

misgivings about the total amount of crack cocaine purchased by the conspiracy" and he believed "that some of the quantity figures [were] inflated in light of the fact that no significant amount of money or no significant quantity of drugs was ever found on any of [the] Defendants." (R. 417, PageID # 1517–18.) We acknowledged this hesitation on Defendants' initial appeal, noting: "Although Judge Enslen questioned whether Butler and Phillips inflated the total quantity of drugs involved, it is clear from the transcript that his concerns were focused on how many *tens* of kilos were involved in this case." *Valentine II*, 694 F.3d at 673. We went on to note that "this is a case where uncontradicted trial testimony indicated that the conspiracy involved tens of kilograms of crack cocaine that were foreseeable to each Defendant as a member of the conspiracy." *Id*.

We again visited the district court's drug determination in this case in the § 3582(c)(2) appeal of Jimmy Ray Valentine, a co-defendant at Defendants' trial. *See United States v. Valentine*, 553 F. App'x 591 (6th Cir. 2014). In that case, we concluded, with respect to the testimony from Butler, that "[e]ven a conservative sum of these estimates exceeds 30 kilograms." *Id*. at 595. Further, with respect to Judge Enslen's hesitations, we noted: "[A]dmittedly, Judge Enslen's 'misgivings' might give us pause had the district court found Valentine responsible for 40 or 50 kilograms." *Id*. at 596 (citing *Valentine II*, 694 F.3d at 673).

The district court reached its finding that this conspiracy involved crack cocaine in excess of 25.2 kilograms by referencing Butler's testimony that "co-defendant Corey Valentine traveled to Arkansas approximately twenty times picking up 1.5 to 3 kilograms of crack." (R. 1025, PageID # 4581.) Also, as we previously noted, even a low-end estimation of this amount exceeds the required 25.2-kilogram threshold. *See Valentine*, 553 F. App'x at 595. Kenneth argues, however, that just choosing a "conservative estimate" is not enough, but that the court

must err on the side of caution. *See, e.g.*, *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990) ("[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution."). As an example of erring on the side of caution, Kenneth points to the calculations employed by the district court that we approved of in *United States v. Whelan*, 396 F. App'x 197 (6th Cir. 2010). In that case, the district court rejected the higher amount of drug proceeds admitted to by the defendant and the higher amount of pills alleged to have been sold by the informant. *Id*. at 200. Instead, the court chose to calculate the individual pill price based on the 1,000 pills defendant attempted to purchase for $33,940 on the day that he was arrested. *Id*. Reaching an estimate of $33 per pill, and adding the 1,000 pills defendant attempted to buy at the time of his arrest, the district court determined that the total number of pills was 7,060, based on the lower amount of drug proceeds testified to by the informant. *Id*. On these facts, we decided that the district court in *Whelan* "actually erred on the side of caution." *Id*. at 201.

Kenneth's reliance on the facts of this case and on our admonition to district courts to "err on the side of caution," however, overextends the district court's duty in a drug-quantity determination. District court judges are not statisticians and should not be required to engage in protracted calculations. Rather, the district court is simply required to determine a drug quantity, based on the preponderance of the evidence, for which the defendant is actually responsible. *Walton*, 908 F.3d at 1302. "If the exact amount cannot be determined, an estimate will suffice." *Id*.

Our decision here is largely determined by our prior decisions on this issue. The district court's determination that the conspiracy involved more than 25.2 kilograms of crack cocaine is supported by substantial and uncontradicted evidence. That this estimate errs on the side of

caution is bolstered by the fact that it accounts for but one of the sources of crack cocaine that trial testimony established supplied this conspiracy. Because a preponderance of the evidence supports the district court's determination that this conspiracy involved more than 25.2 kilograms of crack cocaine, we find no clear error.

> B.       *Scope of Conspiracy Determination*

We turn next to Defendants' argument that the district court failed to make particularized findings as it related to the scope of the agreement and the foreseeability of co-conspirators' conduct. Kenneth argues that the district court erred in attributing every transaction involving his co-defendant, Corey Valentine, to him when Judge Enslen at the initial sentencing never made this finding. Johnny, on the other hand, argues that the district court completely failed to make particularized findings regarding the scope of his agreement in the conspiracy and, instead, conflated this question with the question of reasonable foreseeability. We review the district court's interpretation of guidelines de novo and its findings of fact for clear error. *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008).

The guidelines provide that a defendant's base offense level shall be calculated to include, "in the case of a jointly undertaken criminal activity . . . , all acts and omissions of others that were within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). We have previously held that "this subsection requires that the district court make *particularized* findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002).

Our holding in co-defendant Jimmy Valentine's § 3582(c)(2) appeal, which addressed a virtually identical issue, is equally applicable here: "the district court [] was not writing on a clean slate—Judge Enslen already made detailed findings concerning the scope of [Defendants'] consent and the foreseeability of [their] co-conspirators' conduct." *Valentine*, 553 F. App'x at 597. So, too, we do not begin with a clean slate in determining whether Defendants are properly held responsible for the entire amount of the conspiracy. In *Valentine II*, we expressly concluded that "the conspiracy involved tens of kilograms of crack cocaine that were foreseeable to each Defendant as a member of the conspiracy." 694 F.3d at 673. At Johnny's original sentencing, Judge Enslen considered the facts that Johnny personally made three to five trips to Arkansas to purchase drugs directly from Butler, contributed money to purchase drugs from Butler, was often present and "may even have 'run' a crack house," and concluded that Johnny "played an important role in the conspiracy." (R. 435, PageID # 1553–56, 1558.) The district court, at Johnny's § 3582(c)(2) modification hearing, considered the conclusions of Judge Enslen and further noted its previous finding that Johnny was "waist deep in the conspiracy." (R. 1026, PageID # 4600.)

Likewise, at Kenneth's original sentencing, Judge Enslen first determined that the "jointly undertaken criminal activity was the purchase of both crack and powder cocaine from sources in Arkansans, California, and the resale of crack in Benton Harbor." (R. 417, PageID # 1517.) As to foreseeability, Judge Enslen stated that "trial testimony indicated that [Kenneth] was involved in multiple kilogram purchases of crack cocaine from Arkansas, and he personally negotiated the price, quantity and timing of these transactions. Furthermore, the evidence established [that Kenneth] was personally involved in the purchase of crack from Abdul Moore and that he was either personally involved or at least knowledgeable of the purchase of crack and

powder from sources in California." (R. 417, PageID # 1517.) Judge Enslen also considered the fact that Kenneth contributed money to the purchase of crack cocaine from all three sources, and ultimately concluded that the amount of drugs involved in the conspiracy was foreseeable to Kenneth.

The district court, at Kenneth's sentence-modification hearing, merely expounded on Judge Enslen's finding, stating that "[t]he quantity attributed to Corey [Valentine] is properly attributable . . . to Kenneth Valentine. Corey was the courier. Jimmy Ray Valentine and Kenneth Valentine arranged for the transactions." (R. 1025, PageID # 4582.) More importantly, the district court noted that the amounts retrieved from Butler in Arkansas were reasonably foreseeable to each member of the conspiracy. Having already found that this amount exceeds the 25.2 kilogram threshold, it was proper for the district court to deny the sentence modification.

As such, we conclude that the earlier findings concerning Defendants' roles in the conspiracy foreclose the need for additional, particularized findings. *See Valentine*, 553 F. App'x at 598.

### III.

For the aforementioned reasons, we **AFFIRM** the district court's denial of Defendants' motions for sentence reduction.

**MERRITT, Circuit Judge, concurring in part and dissenting in part.** I concur with the majority's decision to affirm Kenneth Valentine's sentence, but I would vacate Johnny Valentine's sentence and remand for further fact-finding regarding the scope of his agreement to participate in the underlying conspiracy because the record does not contain a sufficiently "particularized" finding of the scope of his agreement.

In the context of sentencing liability in conspiracy cases, "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002). To hold a defendant accountable under the Sentencing Guidelines for a co-conspirator's independent acts, this court requires the sentencing court to make two separate and "particularized" findings: First, that the co-conspirator's acts were within the scope of the defendant's agreement. Second, that those acts were foreseeable to the defendant. *United States v. Campbell*, 279 F.3d 392, 399-400 (6th Cir. 2002). Those findings should be accompanied by a statement on the record of the evidence and reasons supporting the district court's conclusions. *See Orlando*, 281 F.3d at 601. The clear import of our precedents is that defendants may not be sentenced on the basis of "the activities of the whole operation" simply because "the defendant is aware of the scope of the overall operation." *Campbell*, 279 F.3d at 400. Rather, the government must prove—and the court must specifically find—that the defendant agreed to further the activities of the entire conspiracy. *Id.*

The majority correctly holds that the sentencing court has made sufficiently particularized findings on the second prong of the analysis—that is, that it was foreseeable to all members of the conspiracy that the enterprise would result in the purchase and distribution of at least 25.2 kilograms of crack cocaine. *See United States v. Valentine*, 694 F.3d 665, 673 (6th

Cir. 2012); *United States v. Valentine*, 553 F. App'x 591, 595 (6th Cir. 2014). However, the district court's opinions in this case have been less specific regarding its factual findings on the scope of Johnny's agreement to participate in the conspiracy.

The original sentencing court did not attempt to a make particularized finding about the scope of Johnny's agreement because it sentenced Johnny before our decision in *Campbell*. However, the original sentencing court did specifically find that the record evidence was insufficient to support a supervisory role enhancement in light of Johnny's relatively minor role in the conspiracy. While the sentencing judge stated that he was "confident that Defendant Johnny Valentine played an important role in the conspiracy," he pointed to several facts supporting his conclusion that Johnny was not a leader of the conspiracy: Johnny did not negotiate or organize the terms of the drug buys that he consummated. He did not recruit others to participate in the conspiracy. He did not claim a larger share of the profits generated by the conspiracy. And, finally, he played no part in the strategic planning of the conspiracy. At best, the sentencing court's findings about the scope of Johnny's agreement to participate in the conspiracy were mixed—far short of the requirement of particularity established by this court in *Campbell*.

And while the judges who have decided Johnny's successive petitions for a reduced sentence under § 3582 had the benefit of our decision in *Campbell*, they too failed to make sufficiently "particularized" findings about the scope of Johnny's agreement. At various times the judges at those hearings described Johnny as "at least waist deep into this conspiracy, if not more," "responsible for the full amount of the conspiracy," "an integral member of the conspiracy," and Jimmy Ray Valentine's "right-hand man." The judges also described or ratified descriptions of the conspiracy as "very tight-knit [and] family-based" and "in for a penny

in for a pound." However, these descriptions—and the evidence supporting them—were all bound up in the district court's discussion of *Campbell*'s "reasonable foreseeability" prong; they were not the type of discrete and particularized findings that are necessary to justify imposing Johnny with sentencing liability for the independent acts of his co-conspirators.

My opinion is motivated in large part by the unduly severe sentence imposed upon Johnny for his rank-and-file role in this conspiracy. This court's decision in *Campbell* was the product of our concern with using the crime of conspiracy as a "dragnet" to expose co-conspirators to extreme and unfair terms of imprisonment on the basis of crimes that they did not themselves commit. *Campbell*, 279 F.3d at 400. This concern is especially salient in this case given the history of racially disproportionate sentencing in crack cocaine cases like this one.

Accordingly, I would vacate Johnny's sentence and remand to the district court for particularized fact-finding regarding the scope of Johnny's agreement to participate in the conspiracy.