OPINION
KAREN NELSON MOORE, Circuit Judge.
Charles Washpun appeals the district court’s denial of his motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). Because the district court refused to consider Washpun’s letter objecting to his attorney’s response to the Sentence Modifi *512 cation Report, we VACATE the judgment of the district court .and REMAND for further proceedings consistent with this opinion.
I. BACKGROUND
On February 3, 1998, a jury found Washpun guilty of conspiring to possess and distribute both cocaine and cocaine base. R. 458 (Verdict at 1) (Page ID # 1644). Following the verdict, the Probation Office submitted a presentence report (“PSR”) which determined that, under § 2D1.1 of the U.S. Sentencing Guidelines (“U.S.S.G.”), Washpuris sentencing range was 292-365 months. R. 1342 (PSR at 31) (Page ID # 1329). The PSR expressed some concern that this range did not reflect the extent of Washpuris involvement, however. Washpuris base offense level of 38 — the highest base offense level under U.S.S.G. § 2Dl.l(c)(l) — required that he be responsible for at least 1.5 kilograms of cocaine base. U.S. Sentencing Guidelines Manual § 2D1.1 (c)(1) (U.S. Sentencing Comm’n 1997). The PSR estimated that Washpun was responsible for 66 kilograms of cocaine base — 44 times the quantity required by U.S.S.G. § 2Dl.l(c). R. 1342 (PSR at 18-19, 33) (Page ID # 1316-17, 1331). To bring Washpuris sentence in line with his involvement in the conspiracy, the PSR recommended that the district court consider an upward departure. Id. at 33 (Page ID # 1331). Washpun filed an objection to the PSR’s calculation that he was responsible for 66 kilograms of cocaine base. R. 1342 (PSR’s Summ. of Objections at 1) (Page ID # 1332).[1]
The PSR’s calculation was based on statements by Keylen Blackmon, one of the leaders of the conspiracy. R. 1342 (PSR at 18-19, 33) (Page ID # 1316-17, 1331). At trial, Blackmon testified that from 1991 to 1993, he supplied 4.5 ounces of crack cocaine to Washpun two to three times a week. R. 1400-1 (Sentencing Hr’g at 3-4) (Page ID # 1561-62); see also R. 1342 (PSR at 10-11) (Page ID # 1308-09). Blackmon also testified that from 1995 to 1997 he provided crack cocaine to Darryl Ford — another member of the conspiracy. R. 1400-1. (Sentencing Hr’g at 4) (Page ID #1562); see also R. 1342 (PSR at 19) (Page ID # 1317). Blackmon did not testify that he provided Washpun crack cocaine from 1995 to 1997, but he did say that (in Washpuris attorney’s words) “if you were dealing with Mr. Ford, you were essentially dealing with Mr. Washpun.” R. 1400-1 (Sentencing Hr’g at 4) (Page ID # 1562).
At Washpuris sentencing hearing, his attorney raised two issues with the use of Blackmon’s testimony to support an upward departure. First, Blackmon’s testimony that he gave Washpun 4.5 ounces of crack cocaine two or three times a week for two years established only that Wash-pun was responsible for 26 kilograms of cocaine base, not 66 kilograms.[2] Id. at 3-4 (Page ID # 1561-62). Second, Blackmon’s testimony about Ford was just that — testimony about Ford. As Washpun’s attorney emphasized, “There is no testimony in the record, other than that broad assertion that [Ford and Washpun] were one and the same person, that there actually was a delivery to Mr. Washpun.” Id. at 4 (Page ID # 1562). In the alternative, Washpuris attorney argued that even if the district court gave the government “the benefit of the doubt” and attributed half of the *513 amount of crack cocaine that Blackmon said he supplied to Ford to Washpun, Blackmon’s testimony would support only a finding that Washpun was responsible for 46 kilograms of cocaine base. Id. at 4-5 (Page ID # 1562-63).
When the district court asked whether Washpun objected to the PSR’s determination that he was responsible for at least 1.5 kilograms of cocaine base, Washpun’s attorney said that he did not, remarking “we’re obviously talking about over 1.5 kilograms.” Id. at 6 (Page ID # 1564). In response, the government clarified that it was not seeking an upward departure, obviating the need for the district court to determine exactly how much cocaine base Washpun was responsible for. Id. at 6-7 (Page ID # 1564-65). The district court sentenced Washpun to 300 months of imprisonment. Id. at 14 (Page ID # 1572).
Sixteen years later, Washpun filed a pro se motion to reduce his prison sentence under Amendment 782 to the Sentencing Guidelines, which increased to 25.2 kilograms the quantity of cocaine base required to qualify for a base offense level of 38. R. 1330 (Mot. to Reduce Prison Sentence) (Page ID #1281); see U.S. Sentencing Guidelines Manual § 2Dl.l(c)(l) (U.S. Sentencing Comm’n 2014). After two months, with no word from the district court, Washpun filed a second pro se motion to reduce his prison sentence, this time asking for a court-appointed attorney. R. 1335 (Mot. to Reduce Prison Sentence and Mot. to Appoint Counsel) (Page ID # 1291); R. 1336 (Financial Aff.) (Page ID # 1292). The district court directed the Probation Office to prepare a sentence modification report (“SMR”) and appointed a public defender to represent Wash-pun. R. 1337 (Scheduling Order) (Page ID # 1293).
The Probation Office’s SMR determined that Washpun was not eligible for a reduction based on the PSR’s calculation that Washpun was responsible for “at least 66 kilograms of cocaine base.”[3] R. 1354 (SMR at 2) (Page ID # 1408). The report did not mention Washpun’s objection to the PSR’s calculation, even though the objection was attached to the PSR. Id.; see also R. 1342 (PSR’s Summ. of Objections át 1) (Page ID # 1332). The SMR also listed Washpun as a “high security inmate” due to three infractions, including possession of a non-hazardous tool. R. 1354 (SMR at 3) (Page ID # 1409).
Washpun’s appointed counsel filed a response concluding that Washpun was ineligible for a reduction because his sentence was based on “a drug weight of 66 kilograms of cocaine base.” R. 1361 (Def. Resp. to SMR at 2) (Page ID #1434). Washpun’s appointed counsel did not address Washpun’s objection to the PSR’s calculation and, like the SMR, referred to Washpun as “a high-security inmate.” Id. The government filed a response of its own, also concluding that Washpun was ineligible for a reduction. R. 1362 (Government Resp. to SMR at 3) (Page ID # 1438). In a brief order, the district court stated that the SMR had determined Washpun was ineligible and that both Washpun’s appointed counsel and the government agreed. R. 1363 (Order at 1-2) (Page ID # 1440-41). The district court denied the motion without further analysis. Id. at 2 (Page ID # 1441).
The next day, Washpun sent a letter to the district court protesting his appointed counsel’s response to the SMR.. R. 1366-1 (Letter at 1) (Page ID # 1445). It is not *514 clear from the letter whether Washpun had learned of the district court’s ruling the day before. Washpun explained that his appointed counsel had not spoken with him or informed him that the Probation Office would be filing a report.[4] Id. He reiterated his objection to the PSR’s calculation that he was responsible for 66 kilograms of cocaine base and closed with a correction; “[Appointed counsel] also stated that I am a high security inmate which is not true ... I have been at a camp for the last 5 year’s [sic] ... the infractions for a non-hazardous tool is tobacco ... I smoke cigarettes my nerves bad and I am frustrated.” Id. at 1-2 (Page ID # 1445-46) (ellipses in original). The district court rejected Washpun’s letter because it had already closed the case. R. 1366 (Order Rejecting Filing) (Page 'ID # 1444). A few days later, Washpun’s appointed counsel stipulated to a substitution of counsel. R. 1367 (Stipulation for Substitution of Counsel) (Page ID # 1447). Washpun’s new counsel filed a timely notice of appeal. R. 1368 (Notice of Appeal) (Page ID # 1450).
II. JURISDICTION
The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 18 U.S.C. § 3742(a). United States v. Bowers, 615 F.3d 715, 722 (6th Cir.2010).
III. ANALYSIS
In its scheduling order, the district court gave Washpun twenty-one days to respond to the SMR. R. 1337 (Scheduling Order at 2) (Page ID # 1294). The Probation Office filed the SMR on June 2, 2015. R. 1354(SMR) (Page ID # 1407). The record does not indicate when Washpun received the report, but given that it had to be mailed to him in prison, it was likely not until a week or so later. Assuming Wash-pun received the SMR on June 9, 2015, his letter, dated June 24, 2014, was well within the twenty-one day period. See R. 1366-1 (Letter at 2) (Page ID # 1446); see also Brand v. Motley, 526 F.3d 921, 925 (6th Cir.2008) (describing the prison mailbox rule, a “relaxed filing standard” under which “a pro se prisoner’s complaint is deemed filed when it is handed over to prison officials for mailing to the court”). Even in the improbable event that Wash-pun received the SMR on June 3,2015, the day after it was filed, his letter was still within the twenty-one day period. Thus, by the terms of the district court’s own scheduling order, Washpun’s letter was timely. More critically, however, the letter raised serious questions about whether appointed counsel ever conferred with Washpun or even checked the SMR against the record. Given these concerns, the district court should have construed Washpun’s letter as a separate response to the SMR and evaluated Washpun’s substantive arguments as well as inquired into his claim that appointed counsel had not contacted him.
Although district courts have discretion to reject pro se filings by litigants represented by counsel; United States v. Flowers, 428 Fed.Appx. 526, 530 (6th Cir.2011), we have suggested that those filings deserve consideration when the arguments they raise could be meritorious, see, e.g., United States v. Gravley, 587 Fed.Appx. 899, 916 (6th Cir.2014) (addressing pro se claims in addition to claims brought by counsel); Miller v. United States, 561 Fed.Appx. 485, 489 (6th Cir.2014) (accepting pro se filing by a litigant with counsel because it “appears to have merit”); Dillon v. Warden, Boss Corr. Inst., 541 Fed.Appx. 599, 609 (6th Cir.2013) (finding no need to entertain pro se filing that “merely *515 revisits arguments ... already made through counsel”); United States v. Jenkins, 229 Fed.Appx. 362, 370 (6th Cir.2006) (“Although we do not ordinarily consider pro se claims brought by a defendant represented by counsel on appeal, we have, in an abundance of caution, reviewed them.”). We are “left with the definite and firm conviction that the district court committed a clear error of judgment” in rejecting Washpun’s letter. See United States v. Copeland, 321 F.3d 582, 596 (6th Cir.2003) (internal quotation marks omitted). Accordingly, we remand to the district court to determine whether the record supports a finding that Washpun possessed and distributed more than 25.2 kilograms of cocaine base. The comments made by Washpun’s attorney at the initial sentencing cannot serve as a substitute for this determination, as they were made in a different context.
IV. CONCLUSION
For the reasons stated above, we VACATE the judgment of the district court and REMAND for further proceedings.

. ‘Washpun’s original objections are not in our record.

. Washpun’s attorney assumed both the lower quantity and the lower frequency: 4.5 ounces x 2 = 9 ounces/week x 52 weeks = 468 ounces/year x 2 years = 936 ounces or 26 kilograms.

. The PSR had actually concluded that Wash-pun was responsible for "approximately 66 kilograms of crack cocaine,” R. 1342 (PSR at 19) (Page ID # 1317), not "at least 66 kilograms of cocaine base,” R. 1354 (SMR at 2) (Page ID # 1408).

. Washpun does not say whether he received a copy of the SMR.