NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0639n.06

No. 17-1011

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 17, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                    )
                                             )
         **Plaintiff-Appellee,**             )          ON APPEAL FROM THE
                                             )          UNITED STATES DISTRICT
v.                                           )          COURT FOR THE WESTERN
                                             )          DISTRICT OF MICHIGAN
CHARLES WASHPUN,                             )
                                             )
         **Defendant-Appellant.**            )          **OPINION**
                                             )
_____      )

Before:  **DAUGHTREY, MOORE, and GRIFFIN, Circuit Judges.**

         **KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Charles Washpun

appeals the district court's denial of his motion to reduce his sentence under 18 U.S.C.

§ 3582(c)(2).  Because competent evidence supports the district court's finding that Washpun

was responsible for more than 25.2 kilograms of cocaine base, we **AFFIRM** the district court's

order denying Washpun's motion.

## I.  BACKGROUND

         In a prior opinion, we extensively discussed the facts in Washpun's action, *see United*

*States v. Washpun*, 645 F. App'x 511 (6th Cir. 2016), so we will discuss only the facts that

impact the issue presently before us.

         In 1998, a jury found Washpun guilty of conspiring to possess and to distribute

cocaine/cocaine base.  R. 458 (Verdict) (Page ID #1644).  In the presentence report, the

probation office based its calculations on the trial statements of Keylen Blackmon, a leader in the

conspiracy, and it found that Washpun was responsible for 66 kilograms of cocaine base. R. 1342 (PSR at 18–19) (Page ID #1316–17). Washpun objected to this amount. *Id.* at 34 (Page ID #1332).

At the sentencing hearing, Washpun's attorney stated that he was not objecting to the Government's assertion that Washpun was responsible for over 1.5 kilograms of cocaine base. R. 1400-1 (Sentencing Hr'g Tr. at 6) (Page ID #1564). The government informed the district court that it was not requesting an upward departure, so the district court did not make a specific finding regarding the quantity of cocaine base. *Id.* at 6–7 (Page ID #1564–65). Because Washpun was responsible for at least 1.5 kilograms of cocaine base, the base offense level was 38, the highest offense level under USSG § 2D1.1(c)(1). U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (U.S. Sentencing Comm'n 1997). Based on this amount, Washpun received a 300-month imprisonment term. R. 1400-1 (Sentencing Hr'g Tr. at 14) (Page ID #1572).

Then, in 2014, Washpun moved to reduce his sentence under Amendment 782 to the Sentencing Guidelines. R. 1330 (Mot.) (Page ID #1281). Under this amendment, the quantity of cocaine base necessary to trigger a level of 38 increased to 25.2 kilograms. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (U.S. Sentencing Comm'n 2014). In a sentence modification report, the probation office stated that Washpun was responsible for at least 66 kilograms of cocaine base. R. 1354 (SMR at 2) (Page ID #1408). Because of this report, Washpun's attorney and the government agreed that Washpun was not eligible for a sentence reduction. R. 1361 (Def. Resp. to SMR at 2) (Page ID #1434); R. 1362 (Gov. Resp. to SMR at 3) (Page ID #1438).

The district court then determined that Washpun was not eligible for a sentence modification. R. 1363 (Order at 1–2) (Page ID #1440–41).

The next day, Washpun submitted a letter to the district court, in which he objected to his attorney's agreement with the report. R. 1366-1 (Letter) (Page ID #1445). But the district court rejected the letter. R. 1366 (Order) (Page ID #1444). In *Washpun*, 645 F. App'x at 515, we found that the district court clearly erred by rejecting this letter, so we remanded the case with instructions to determine whether Washpun was responsible for more than 25.2 kilograms of cocaine base.

After we remanded the case, the district court examined the amount of cocaine base attributable to Washpun. *See United States v. Washpun*, No. 1:97-cr-82, 2016 WL 4607565, at *2–4 (W.D. Mich. Sept. 6, 2016). At the trial, Blackmon testified that he gave Washpun 4.5 ounces of cocaine base at least two to three times per week between 1991 and 1993. *Id.* at *2. Based on this testimony, the district court calculated the cocaine base attributable to Washpun from 1991 to 1993:

> Thus, the record supports a finding that Defendant was involved in distributing cocaine base in 1991, 1992, and 1993. Consequently, an estimate that is more consistent with the evidence, and yet one that is still very conservative, is that Defendant received at least 4.5 ounces of cocaine base two times per week for at least 14 months (i.e. from December 1, 1991, to January 31, 1993), which is 61 weeks. 9 ounces a week for 61 weeks is 549 ounces. At 35.27 ounces per kilogram, this equals 15.56 kilograms.

*Id.* at *3. Second, Blackmon testified that Darryl Ford and Washpun worked together from sometime in 1995 to June 1997 to distribute cocaine base from Blackmon, and Blackmon gave

3

Ford 9 to 18 ounces of cocaine base per week. *Id.* at *2. Blackmon stopped distributing when he

was arrested in June 1997. *Id.* For the amount attributable to Washpun from 1995 to June 1997,

the district court stated the following:

> Blackmon clearly testified that he distributed cocaine base to Ford and Washpun in 1995; thus, the record supports a finding that at least part of 1995 should be used. The Court will use a conservative estimate of 78 weeks, which includes the last month of 1995, all of 1996, and the first five months of 1997.
>
> . . . .
>
> The record supports a finding that the cocaine base given to Ford was part of the same scheme undertaken by Defendant, Blackmon and Ford, acting in concert, to distribute those drugs. Thus, for purposes of sentencing, Defendant is responsible for the drugs distributed to Ford in 1995 to 1997.
>
> 78 weeks times 9 ounces per week is 702 ounces, which equals 19.90 kilograms. Adding this quantity to 15.56 kilograms for the period from 1991 to 1993 results in 35.46 kilograms, which is far greater than 25.2 kilograms of cocaine base.
>
> Even if the Court were to attribute *half* of the 19.90 kilograms of cocaine base to Defendant, in line with Defendant's suggested calculation of 9 ounces every *other* week, the total amount for both time periods would be 25.51 kilograms, which is still greater than 25.2 kilograms.

*Id.* at *3. Therefore, because he was responsible for at least 25.51 kilograms of cocaine base,

Washpun was not eligible for a sentence reduction. *Id.* at *4.

## II.  DISCUSSION

"A motion for modification made under 18 U.S.C. § 3582(c)(2) is reviewed for an abuse

of discretion." *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009) (quoting *United States

v. Carter*, 500 F.3d 486, 490 (6th Cir. 2007)).  However, "[a] district court's determination of the

quantity of drugs used to compute a defendant's sentence is a finding of fact that should be

upheld unless clearly erroneous." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013) (quoting *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009)); *see also United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir. 1990) ("[a] district court's decision on the amount of cocaine a defendant is to be held accountable for is a finding of fact which must be accepted by a court of appeals unless clearly erroneous.").

"Where the exact amount of drugs involved is unclear, a court may approximate the quantity of drugs based on circumstantial evidence, making sure to 'err on the side of caution.'" *United States v. Valentine*, 694 F.3d 665, 672 (6th Cir. 2012) (quoting *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000)). "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by competent evidence in the record." *Id.* at 672–73 (quoting *United States v. Mahaffey*, 53 F.3d 128, 132 (6th Cir. 1995)). For instance, "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *Hernandez*, 227 F.3d at 697–98 (citing *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998)).

A court—the modification court—can modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). There are two steps that the modification court must follow: (1) examine whether the defendant is eligible to receive a sentence modification and (2) consider the factors in 18 U.S.C. § 3553(a) to determine whether a reduced sentence is warranted. *Dillon v. United States*, 560 U.S. 817, 827 (2010).

Under the first step, for a defendant to be eligible for a sentence modification, the amendment needs to lower his or her sentence. *Id.* "To determine whether a retroactive amendment would lower a defendant's sentence, the district court considering the modification motion . . . must examine the record that was available to the original sentencing court." *Valentine*, 694 F.3d at 670. "[I]f the record does not reflect a specific quantity finding but rather a finding or a defendant's admission that the defendant was responsible for 'at least' or 'more than' a certain amount, then the modification court must make supplemental findings based on the available record." *Id.* (citing *Moore*, 582 F.3d at 646). "Essentially, the modification court must determine whether a preponderance of the evidence in the record establishes that the defendant is responsible for the quantity of drugs set forth in the retroactive amendment." *Id.*

Here, only the first step is at issue, and trial testimony supports the district court's calculations. During the trial, Buddy Marshall testified that he began selling cocaine base with Washpun in 1993. R. 1433-1 (Resp. Ex. Trial Tr. at 13–14) (Page ID #1773–74). Additionally, according to Ambrose Williams, Washpun received cocaine base from Blackmon in 1991. *Id.* at 16 (Page ID #1780). And Blackmon corroborated this fact because he began to sell cocaine base "[a]round [19]91." R. 1401-2 (Notice Attach. 2 at 31) (Page ID #1584). From 1991 to 1993, Blackmon approximated that he gave Washpun 4.5 ounces of cocaine base two to three times per week. *Id.* Throughout this period, Washpun worked with Ford, and working with the two of them "was like working with the same person." R. 1433-1 (Resp. Ex. Trial Tr. at 33) (Page ID

6

#1798). Then, sometime in 1993, Blackmon moved to Atlanta, Georgia. *Id.* at 38 (Page ID #1799).

When Blackmon moved back to Kalamazoo, Michigan, in 1995, he continued to distribute cocaine base to Ford and Washpun. *Id.* at 41 (Page ID #1802). According to Blackmon, he gave Ford roughly 9 to 18 ounces of cocaine per week, and he stated that he "could get in contact with Darryl Ford or [Washpun]. It was -- it was the same." *Id.* at 43–44 (Page ID #1804–05). But when he was arrested in June 1997, Blackmon stopped distributing cocaine base. *Id.* at 44 (Page ID #1805).

The district court used the smallest quantities from this trial testimony to estimate the amount of cocaine base attributable to Washpun. The district court determined that Washpun received cocaine base (1) from December 1, 1991, to January 31, 1993, 61 weeks; (2) the last month of 1995, 4 weeks; (3) all of 1996, 52 weeks; and (4) the first 5 months of 1996, 22 weeks. *Washpun*, 2016 WL 4607565, at *3. For 1991 to 1993, Washpun received roughly 4.5 ounces of cocaine base two times per week, and 9 ounces a week for 61 weeks is 549 ounces, which is 15.56 kilograms. *Id.* Then, for 1995 to 1997, the district court estimated that Washpun received 9 ounces per week for 78 weeks, which is 19.90 kilograms. *Id.* The district court divided this amount in half to account for Ford's share of the cocaine base, so Washpun received roughly 9.95 kilograms of cocaine base from 1995 to 1997. *Id.* In total, between 1991 and 1997, the district court determined that Washpun received at least 25.51 kilograms of cocaine base. *Id.* Because he received more than 25.2 kilograms of cocaine base, Washpun cannot receive a

reduced sentence under Amendment 782. Thus, the district court did not clearly err by denying Washpun's motion. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (U.S. Sentencing Comm'n 2014).

## III. CONCLUSION

Because competent evidence supports the district court's finding that Washpun was responsible for more than 25.2 kilograms of cocaine base, we **AFFIRM** the district court's order denying Washpun's motion to amend his sentence.