*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0327p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

11-1296/1345/1916
UNITED STATES OF AMERICA,
                                  *Plaintiff-Appellee*,


          *v.*


KENNETH JEROME VALENTINE; COREY
TIWANE VALENTINE; JOHNNY VALENTINE,
                                  *Defendants-Appellants*.

11-1450
UNITED STATES OF AMERICA,
                                  *Plaintiff-Appellant*,


          v.


JIMMY RAY VALENTINE,
                                  *Defendant-Appellee*.

Nos. 11-1296/ 1345/ 1916/ 1450

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:99-cr-1
Paul Lewis Maloney, Chief District Judge; Robert J. Jonker, District Judge.

Argued: June 7, 2012

Decided and Filed:  September 12, 2012

Before:  BATCHELDER, Chief Judge; KEITH and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Christopher M. Gibbons, THE LAW OFFICES OF DUNN/GIBBONS, Grand Rapids, Michigan, Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellants in cases 11-1296, 11-1345, and 11-1916. Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee in Cases 11-1296, 11-1345, and 11-1916. Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellant in 11-1450. Jennifer L. Swize, JONES

DAY, Washington, D.C., for Appellee in 11-1450.   **ON BRIEF:** Christopher M. Gibbons, THE LAW OFFICES OF DUNN/GIBBONS, Grand Rapids, Michigan, Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellants in cases 11-1296, 11-1345, and 11-1916.   Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee in Cases 11-1296, 11-1345, and 11-1916.   Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellant in 11-1450.   Jennifer L. Swize, JONES DAY, Washington, D.C., for Appellee in 11-1450.

———————

**OPINION**

———————

ALICE M. BATCHELDER, Chief Judge.  Defendants Kenneth, Corey, Johnny, and Jimmy Ray Valentine[1] moved for sentencing modifications under 18 U.S.C. § 3582(c)(2) based on amendments to the crack cocaine sentencing guidelines.  Judge Paul L. Maloney considered Kenneth's, Corey's, and Johnny's requests, determined that they were ineligible for sentencing reductions, and denied their motions.  Judge Robert J. Jonker considered Jimmy Ray's motion, determined that he was eligible for a reduction, and reduced his sentence by six months.  For the reasons that follow, we AFFIRM Judge Maloney's orders, REVERSE Judge Jonker's order, and REMAND Jimmy Ray's case to the district court.

**I.**

Between 1991 and 1999, Kenneth, Corey, Johnny, and Jimmy Ray Valentine were involved in a large-scale drug operation in Benton Harbor, Michigan.  A federal grand jury indicted them, along with several other people, on charges of conspiracy to distribute and possess with the intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Kenneth, Corey, Johnny, and Jimmy Ray chose to proceed to trial, and Judge Richard A. Enslen presided.

———————

[1]Because Defendants share the same last name, we will refer to them by their first names.

During trial, Jerry Lee Butler testified that he supplied the Defendants with kilogram quantities of crack cocaine in Mariana, Arkansas. Butler estimated that he sold approximately 50 kilograms of crack cocaine to Kenneth, Corey, Johnny, and Jimmy Ray between 1994 and 1998. Specifically, he testified that he sold between one-and-a-half and two-and-a-half kilograms to Jimmy Ray and Kenneth two or four separate times, that Jimmy Ray and Kenneth arranged for several other deliveries that Corey or Johnny would pick up, that Corey made approximately twenty trips to Arkansas to pick up one-and-a-half to three kilograms of crack cocaine at a time, and that Johnny picked up drugs on three to five occasions.

Yusef Phillips, another government witness, testified that in 1995, he partnered with the Valentines to purchase drugs from Butler. Phillips also testified that he obtained other suppliers for the Valentines: one in Michigan that supplied ounce-quantity amounts six or seven times, and one in California that supplied kilogram-quantity amounts five or six times. Overall, Phillips estimated that between 1995 and 1998, the Valentines distributed three kilograms of crack cocaine per month, roughly 75 kilograms, with about 60 kilograms coming from Jerry Lee Butler.

On February 11, 2000, the jury found Kenneth, Corey, Johnny, and Jimmy Ray guilty on one count of conspiracy to distribute and possess with the intent to distribute crack cocaine. Prior to sentencing, the United States Probation Office prepared Presentence Investigation Reports (PSRs) for each Defendant, concluded that each Defendant's criminal activity involved more than 1.5 kilograms of crack cocaine, and recommended that each Defendant receive the highest base-offense level of 38. At the time of Defendants' sentencings, the highest base-offense level applied if the drug quantity attributable to the defendant was 1.5 kilograms or more of cocaine base. U.S.S.G. § 2D1.1(a)(3), tbl. (c)(1) (2000). Each Defendant objected to his PSR's quantity statement.

Judge Enslen held sentencing hearings for each Defendant and individually considered each Defendant's objection. Summarizing Kenneth Valentine's role in the conspiracy, the court stated, "The trial testimony indicated that [Kenneth] was involved

in multiple kilogram purchases of crack cocaine from Arkansas, and he personally negotiated the price, quantity[,] and timing of these transactions." The court overruled Kenneth's objection to the quantity, noting that it had "serious misgivings" about the total amount of crack cocaine that the conspiracy purchased but nevertheless concluding that "[a] preponderance of the evidence . . . support[s] the conclusion that the conspiracy purchased at least 1.5 kilograms of crack cocaine and a great deal more." [*Id.* at 12-13].

The court also overruled Corey Valentine's objection. Judge Enslen noted that Jerry Lee Butler testified that Corey had made "approximately 20 trips to Arkansas to pick up multiple kilograms of crack cocaine." Overall, the court noted, Butler testified that the conspiracy purchased nearly 50 kilograms of crack cocaine, and Yusef Phillips testified that the total amount was closer to 75 kilograms. Although Judge Enslen noted that the figures "relating to the total amount of crack involved in the conspiracy may be inflated or may not be," he ultimately determined that "the conspiracy is responsible for at least 1.5 kilograms of crack."

The court noted these same concerns about the total quantity during Johnny's sentencing. Nevertheless, the court overruled Johnny's quantity objection, concluding that the conspiracy was responsible for at least 1.5 kilograms of crack cocaine, which was reasonably foreseeable by Johnny. Judge Enslen concluded by stating, "That I think is an easy finding of more than 1.5 kilograms, but it's only necessary to find 1.5."

Judge Enslen also overruled Jimmy Ray's objection, again referencing Butler's testimony that he sold crack cocaine to Jimmy Ray "three to five times" and that Jimmy Ray "purchased one to two kilos in those transactions." The court also noted that "nobody contradicted Jerry Lee Butler." Finally, Judge Enslen stated, "While the Court might have misgivings about the total amount of crack, whether it is 50 to 60 kilos or not, I have no trouble finding that [Jimmy Ray] purchased and possessed at least 1.5 kilograms of crack cocaine."

After calculating each Defendant's Guideline range, Judge Enslen sentenced each Defendant to the lowest possible sentence within that range. We affirmed their

convictions and sentences on direct appeal. *United States v. Valentine*, 70 F. App'x 314 (6th Cir. 2003).

Between March 2008 and July 2009, Defendants moved for sentence modifications or reductions under 18 U.S.C. § 3582(c)(2) based on the application of Amendments 706 and 711 to the Sentencing Guidelines, which were made retroactive on March 3, 2008. Judge Maloney received Kenneth's, Corey's, and Johnny's motions, and Judge Jonker received Jimmy Ray's motion.

Judge Maloney held separate hearings on each Defendant's motion, examining the records from their original sentencings and carefully considering Judge Enslen's statements from the sentencing transcripts. Ultimately, Judge Maloney found that Kenneth, Corey, and Johnny were not eligible for sentence modifications under the retroactive amendments because a preponderance of the evidence available at Defendants' original sentencings established that they were responsible for more than 4.5 kilograms of crack cocaine. Judge Jonker did not hold a hearing on Jimmy Ray's motion and instead issued an order granting the motion and reducing Jimmy Ray's sentence by six months. Judge Jonker determined that Jimmy Ray was eligible for a sentence reduction because finding that he was responsible for more than 4.5 kilograms of crack cocaine would be functionally inconsistent with Judge Enslen's original finding that Jimmy Ray was responsible for "at least 1.5 kilograms."

Kenneth, Corey, and Johnny have timely appealed Judge Maloney's rulings, and the government has timely appealed Judge Jonker's ruling.

**II.**

A district court may modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Accordingly, "a previously imposed sentence may be reduced if the guideline range originally applicable to the defendant was lowered as a result of a retroactive amendment" to the Guidelines. *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010). In 2007, the

Commission enacted Amendment 706, which increased the threshold amount of cocaine base that must be attributable to a defendant before a court may impose the highest base-offense level. Prior to Amendment 706, a court could impose the highest base-offense level if the quantity of cocaine base attributable to the defendant was 1.5 kilograms or more. Amendment 706 increased that threshold quantity to 4.5 kilograms.[2] U.S.S.G. app. C, amend. 706. In 2008, Congress made the Amendment retroactive in an effort to reduce sentences for most crack cocaine offenses.

A district court considering a defendant's motion for a sentencing modification or reduction must conduct the two-step inquiry outlined in *Dillon v. United States*, 130 S. Ct. 2683, 2691–92 (2010). The court must first determine if the defendant is eligible for a sentence modification, and second, the court must determine whether the reduction is warranted after consideration of the factors listed in 18 U.S.C. § 3553(a). *Id.* Generally, we review a district court's decision to modify a sentence under 18 U.S.C. § 3582(c)(2) for abuse of discretion. *Curry*, 606 F.3d at 327. However, if a district court's refusal to modify a sentence rests on its determination that the defendant is ineligible for a sentence reduction, we review *de novo* the district court's eligibility determination. *United States v. Watkins*, 625 F.3d 277, 281 (6th Cir. 2010); *Curry*, 606 F.3d at 327. Additionally, we review for clear error a district court's factual findings made in connection with the Sentencing Guidelines. *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009). As the parties agreed at oral argument, the primary issue before us on appeal is whether the Defendants are eligible for sentence reductions.

A defendant is eligible for a sentence reduction only if the amendment has "the effect of lowering the defendant's applicable guideline range" when the court substitutes the amendment for the corresponding guideline provision that was applied when the defendant was sentenced, leaving "all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(a)(2)(B); *Dillon*, 130 S. Ct. at 2691; *see also Watkins*, 625 F.3d at 282. To determine whether a retroactive amendment would lower a defendant's

---

[2]Additional amendments made retroactive in 2011 have increased this threshold to 8.4 kilograms. *See* U.S.S.G. app. C, amends. 748, 750, & 759.

sentence, the district court considering the modification motion—the modification court—must examine the record that was available to the original sentencing court. *See United States v. McKinney*, 464 F. App'x 444, 447 (6th Cir. 2012); *Moore*, 582 F.3d at 646. If the record indicates that there was a finding of a specific quantity of drugs, either because the original sentencing judge made a specific finding or because the defendant admitted to a specific quantity, then the modification court must use that quantity and determine whether applying the retroactive amendment has the effect of lowering the Guideline range; if it does, the defendant is eligible, and the court proceeds to the second step of the *Dillon* analysis. *Watkins*, 625 F.3d at 281. However, if the record does not reflect a specific quantity finding but rather a finding or a defendant's admission that the defendant was responsible for "at least" or "more than" a certain amount, then the modification court must make supplemental findings based on the available record to determine if applying the retroactive amendment lowers the Guideline range. *Moore*, 582 F.3d at 646. Essentially, the modification court must determine whether a preponderance of the evidence in the record establishes that the defendant is responsible for the quantity of drugs set forth in the retroactive amendment. The modification court's examination of the record will include the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted. *See, e.g.*, *United States v. Blackmon*, 380 F. App'x 498, 501 (6th Cir. 2010) (finding defendant ineligible based on portions of the PSR that he admitted to by failing to object); *see also Moore*, 582 F.3d at 646 (remanding to district court to determine whether the record establishes that defendant was responsible for more than 4.5 kilograms of drugs).

Applying this analysis to the present cases, we must first reject Defendants' contention that Judge Enslen's findings of "at least 1.5 kilograms" are specific findings of quantity that preclude further fact-finding upon a motion for sentence modification. At Kenneth's, Corey's, and Jimmy Ray's sentencings, Judge Enslen found that "at least 1.5 kilograms" of crack cocaine was attributable to each Defendant. At Johnny's hearing, Judge Enslen found that he was responsible for "more than 1.5 kilograms." Despite Defendants' arguments to the contrary, these statements are not specific quantity

findings, and they do not set a ceiling at which a later modification court is limited; instead, the straightforward, logical reading of these statements is that 1.5 kilograms is a floor from which a higher finding can be determined. Aside from the simple semantics that support this interpretation, the context of the statements and the practicalities of the Guidelines also support this conclusion. Judge Enslen made these general findings of "at least" and "more than" 1.5 kilograms after reflecting on the testimonies of Butler and Phillips that the conspiracy involved upwards of 50 kilograms of crack cocaine. Although Judge Enslen expressed "misgivings" about their testimonies of the total amount involved in the conspiracy, it is clear from the transcript that the court's concerns rested with the upper-end of the possible total. At no point did Judge Enslen express concern about the lower-end quantities. A straightforward reading of the transcript simply does not support the conclusion that Judge Enslen limited his quantity determination to 1.5 kilograms.

Judge Enslen's statements are even less indicative of a specific finding of 1.5 kilograms in light of the structure of the applicable Guidelines at the time, which required a finding of only 1.5 kilograms to impose the highest base-offense level. A reasonable understanding of Judge Enslen's determination with this limitation in mind indicates that he chose not to quibble over whether the exact quantity was closer to 50 or 60 kilograms when, as he stated, "it's only necessary to find 1.5."[3] Finally, and most importantly, we have previously held that a finding of "more than 1.5 kilograms" does not prevent a subsequent court that is considering a modification motion from making additional factual findings. *Moore*, 582 F.3d at 646. Accordingly, we reject Defendants' argument that Judge Enslen's statements qualify as a specific finding of quantity; Judge

---

[3] Defendants contend that despite the 1.5-kilogram threshold, Judge Enslen still had an incentive to make a specific finding of a higher quantity because it would have affected the length of the sentence within the Guideline range, and that indeed, Judge Enslen had made specific, above-threshold findings in other cases. These arguments fail to persuade us that Judge Enslen set the quantity limit in Defendants' cases at 1.5 kilograms. First, Judge Enslen did not indicate that his selection of a sentence within the Guideline range had anything to do with the drug quantity involved. Instead, during Corey's sentencing, just before he chose the lowest possible sentence, Judge Enslen stated that he thought the Guidelines were "too severe," and during Johnny's sentencing, he expressed concern about the drug culture in Defendants' neighborhood. In light of these statements, and without any similar statements about quantity, Judge Enslen's selection of the lowest possible sentence appears to be immaterial on the issue of quantity. Likewise immaterial are the cases Defendants cite where Judge Enslen made the above-threshold findings because there is no indication that he made such findings in every similar situation.

Enslen made only general findings of the quantity attributable to each Defendant, and those statements do not preclude the modification court from making additional factual findings regarding quantity.

Likewise without merit is Defendants' argument that their objections to their PSRs distinguish their case from *Moore* and prevent the modification court from examining the record. In *Moore*, the defendant's failure to object to his PSR had no bearing on whether the modification court could consider the original record when ruling on the modification motion. We remanded the case precisely because the modification court had not made a specific finding of whether defendant was responsible for more than 4.5 kilograms. We determined that making such a finding required the modification court to examine the record from the original sentencing, which in that case included the PSR because the defendant had admitted to the facts stated therein. *Moore*, 582 F.3d at 646 n.2 ("The district court should make its decision based on the information that was available at the time of sentencing . . . ."). In *Moore*, the district court refused to consider Moore's objection to the Sentence Modification Report's 4.5-kilogram finding because Moore had already admitted to distributing "at least 1.5 kilograms" when he failed to object to that statement in the PSR at his original sentencing and, therefore, admitted to its "at least 1.5 kilograms" statement. *Id.* at 644. We found that the district court erred because the defendant's admission to "at least 1.5 kilograms" did not necessarily mean that he also admitted to 4.5 kilograms. *Id.* at 644–45. Because there had to be a specific finding that the defendant was responsible for 4.5 kilograms before the court could determine that the defendant was ineligible, we remanded the case to the modification court so that it could examine the record, including the original PSR, and determine if a preponderance of the evidence linked the defendant to 4.5 kilograms. *Id.* at 646.

The issue that faced the district court in *Moore* is essentially the same issue that faced Judge Maloney and Judge Jonker in Defendants' cases—the original sentencing resulted only in a finding that the defendant was responsible for "at least 1.5 kilograms." In *Moore*, that finding came from defendant's failure to object to the PSR, and in the

Valentines' cases, it came from Judge Enslen's overrulings of their objections and his conclusion that each Defendant was responsible for "at least 1.5 kilograms." As we stated in *Moore*, a finding of "at least 1.5 kilograms" does not necessitate a finding of 4.5 kilograms, 582 F.3d at 646; therefore, the modification court must look at the record of the original sentencings[4] and determine if a preponderance of the evidence indicates that Defendants were responsible for 4.5 kilograms.

Having concluded that further fact-finding was not only permitted but required in order to resolve Defendants' motions, we turn now to our review of Judge Maloney's and Judge Jonker's rulings.[5] We review for clear error factual findings that the district court makes during its application of the Sentencing Guidelines, including the district court's determination of the quantity of drugs attributable to the defendant for sentencing purposes. *Moore*, 582 F.3d at 644; *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir. 1995). A factual finding is clearly erroneous when, on the entire evidence, we are "left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks and citation omitted). Where the exact amount of drugs involved is unclear, a court may approximate the quantity of drugs based on circumstantial evidence, making sure to "err on the side of caution." *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000). "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by competent evidence in the record." *Mahaffey*, 53 F.3d at 132 (internal quotation marks and citation omitted).

---

[4]To the extent that Defendants' attempts to distinguish *Moore* encompass the argument that the modification court in their cases cannot consider their PSRs as the district court did in *Moore*, they are likely correct because they, unlike the defendant in *Moore*, objected to their PSRs. However, Judge Enslen's sentencing transcripts alone are sufficient to indicate a quantity by a preponderance of the evidence. Indeed, Judge Maloney looked only to Judge Enslen's statements at sentencing and the trial transcript when he ruled on Defendants' motions.

[5]Preliminarily, we must also reject Defendants' contention that the government cannot argue, and the district court cannot find, an amount higher than 1.5 kilograms because the government waived a higher finding by not presenting evidence of the higher amount when it had the opportunity to do so at the original sentencings. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted). This certainly does not apply here where the government did not have an incentive to prove anything more than 1.5 kilograms at the original sentencing and could not have knowingly relinquished the unforeseeable necessity to subsequently argue a higher amount.

Judge Maloney's conclusions that Kenneth, Corey, and Johnny were each responsible for at least 4.5 kilograms of crack cocaine are supported by competent evidence in the record that was available at Defendants' original sentencings and, therefore, are not clearly erroneous. Judge Maloney carefully examined Judge Enslen's statements from the original sentencing hearing transcripts and determined that Judge Enslen believed that more than 4.5 kilograms were involved in this conspiracy. Indeed, as Judge Maloney noted during Corey Valentine's hearing, "There is nothing in the record to indicate that Judge Enslen confined himself to less than 4.5 kilograms." Although Judge Enslen questioned whether Butler and Phillips inflated the total quantity of drugs involved, it is clear from the transcript that his concerns were focused on how many *tens* of kilos were involved in this case. If the amended quantity threshold was 40 kilograms rather than 4.5 kilograms, Judge Maloney would have had a tougher question to answer. However, this is a case where uncontradicted trial testimony indicated that the conspiracy involved tens of kilograms of crack cocaine that were forseeable to each Defendant as a member of the conspiracy, and Judge Maloney's determination is consistent with Judge Enslen's original finding. Judge Maloney, therefore, correctly concluded that Kenneth, Corey, and Johnny were ineligible for sentence reductions because a preponderance of the evidence in the record indicates that more than 4.5 kilograms of crack cocaine were attributable to them.

Judge Jonker, considering Jimmy Ray's modification motion, also carefully examined Judge Enslen's original transcript, but reached a conclusion contrary to Judge Maloney's and found that Jimmy Ray was eligible for a sentence reduction. He concluded that Judge Enslen "set a specific low end threshold" of 1.5 kilograms of crack cocaine when Judge Enslen found that Jimmy Ray was responsible for "at least 1.5 kilograms," and that it would be inconsistent, both functionally and literally, to increase the quantity finding beyond 1.5 kilograms. [*See* R.802, Dist. Ct. Order, at 4]. Reviewing *de novo* Judge Jonker's eligibility determination, *Watkins*, 625 F.3d at 280, we find his reading of the record incorrect and his ultimate determination improper.

Judge Jonker determined that a supplemental finding of more than 1.5 kilograms would be inconsistent with Judge Enslen's original finding of "at least 1.5 kilograms," despite our clear statement in *Moore* that "[s]ince 4.5 kilograms is more than 1.5 kilograms, a new factual finding of the higher quantity is not inconsistent with the court's determination at [the defendant's] original sentencing." 582 F.3d at 646. He reasoned that *Moore*'s instruction to allow further fact finding did not apply in this case because in *Moore*, the parties stipulated to the quantity of "at least 1.5 kilograms," whereas here, the parties contested the quantity and the district court made the "at least 1.5 kilogram" finding. This, however, is a distinction without a difference: in both *Moore* and this case, the modification court was faced with the original sentencing record that established only that the defendant was responsible for "at least 1.5 kilograms." We do not see the legal significance in the way that determination was reached at the original sentencing—whether it was by stipulation or judicial resolution of the parties' objections—and we conclude that there is no significance in this circumstance. Instead, we reiterate our position in *Moore* that a district court considering a sentencing modification motion faced with only a general or vague finding of drug quantity must look at the record from the original sentencing and determine what quantity the defendant is responsible for by a preponderance of the evidence, and then determine if applying the retroactive amendment would lower the defendant's Guideline range.[6] This approach is consistent with the language of the Guidelines[7] and with other circuits that also allow further fact finding during a modification motion. *See United States v. Hernandez*, 645 F.3d 709, 712–13 (5th Cir. 2011); *United States v. Jones*, 388

---

[6]This does not require the modification court to find a specific amount of drugs. Indeed, a sentencing court may not simply guess the amount of drugs attributable to the defendant. *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994). Instead, "[i]f the amount cannot be easily determined, it is the duty of the District Court to estimate the amount," making sure to err on the side of caution and hold the defendant accountable for only the amount that he is "more likely than not *actually* responsible for." *Id.* (internal quotation marks and citation omitted). Therefore, it is sufficient for the court to consider the amount of the new threshold in the retroactive amendment, here 4.5 kilograms, and determine whether a preponderance of the evidence in the record indicates that the defendant is responsible for that amount.

[7]U.S.S.G. § 1B1.10(b)(1) ("In determining whether . . . a reduction in the defendant's term of imprisonment . . . is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced.").

F. App'x 314, 315 (4th Cir. 2010); *United States v. Woods*, 581 F.3d 531, 538–39 (7th Cir. 2009).

Likewise incorrect is Judge Jonker's determination that Judge Enslen's "at least 1.5 kilogram" finding set a low-end threshold and that supplemental findings of a higher quantity would be inconsistent with the record. The court reasoned that 1.5 kilograms was a specific, low-end finding because Judge Enslen sentenced Jimmy Ray to the lowest possible sentence within the Guideline range when he could have sentenced him to a higher amount in the range based on the amount of drugs involved, and Defendant argues that this indicates that Judge Enslen must have determined that Jimmy Ray was responsible for only 1.5 kilograms. However, the record does not suggest that Judge Enslen chose the lowest end of the Guideline range because of the quantity involved but rather because he was concerned with the harshness of the Guidelines, from which he was not permitted to vary, and that at the time, 1.5 kilograms was all he was required to find to impose the highest base-offense level. More importantly, Judge Jonker's conclusion that a higher finding would be inconsistent directly conflicts with our clear statement in *Moore* that a finding of 4.5 kilograms is not inconsistent with an original finding of "at least 1.5 kilograms." 582 F.3d at 646.

Judge Jonker improperly applied our precedent from *Moore* when he determined that a higher finding of 4.5 kilograms is inconsistent with the original sentencing finding of "at least 1.5 kilograms." Based on this incorrect application, the court concluded that it could not make additional factual findings regarding quantity and that Jimmy Ray was eligible for a sentence reduction. Accordingly, the district court abused its discretion when it granted Jimmy Ray's motion for a sentence reduction. *See Curry*, 606 F.3d at 327 ("A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." (internal quotation marks and citation omitted)). There is credible evidence in the record that Jimmy Ray was responsible for more than 4.5 kilograms of crack cocaine; Butler's trial testimony and Judge Enslen's reflections on that testimony during Jimmy Ray's sentencing indicate that a preponderance of the evidence establishes that more than

4.5 kilograms of crack cocaine was attributable to Jimmy Ray Valentine. Accordingly, on remand the district court should determine whether the record shows by a preponderance of the evidence that Jimmy Ray Valentine was responsible for at least 4.5 kilograms of crack cocaine.

## III.

For the foregoing reasons we **AFFIRM** the district court orders finding Kenneth, Corey, and Johnny Valentine ineligible for sentence modifications or reductions, and we **REVERSE** the district court's order granting Jimmy Ray Valentine's motion to reduce his sentence and **REMAND** his case to the district court for further proceedings consistent with this opinion.