**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant*,

v.

EMILIO HUARACHA RODRIGUEZ,
    *Defendant-Appellee.*

No. 17-10233

D.C. No.
2:11-cr-00135-
JAM-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted September 7, 2018
San Francisco, California

Filed April 24, 2019

Before: Marsha S. Berzon and Michelle T. Friedland,
Circuit Judges, and Kathleen Cardone,* District Judge.

Opinion by Judge Berzon;
Dissent by Judge Cardone

* The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel reversed the district court's order granting Emilio Huaracha Rodriguez's motion pursuant to 18 U.S.C. § 3582(c)(2) for reduction of sentence in light of Sentencing Guidelines Amendment 782, and remanded for supplemental drug-quantity findings.

The panel clarified that, under *United States v. Mercado-Moreno*, 869 F.3d 942 (9th Cir. 2017), drug quantities in an adopted presentence investigation report, without an explicit and specific drug quantity finding by the original sentencing judge, are not binding in § 3582(c)(2) proceedings. The panel held that because the judge at Rodriguez's initial sentencing did not make a specific finding of drug quantity, and Rodriguez did not admit to a specific drug quantity beyond the quantity necessary to determine the appropriate Guidelines range, there were no binding drug quantity findings or admissions that bound the district court at the later § 3582(c)(2) proceedings.

The panel held that if, as here, the district court at the original sentencing did not make a specific drug quantity finding, the proper course is for the district court to engage in supplemental fact-finding to determine whether the defendant is eligible for a sentence reduction under § 3582(c)(2). The panel therefore remanded to the district

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court for supplemental findings of drug quantity and, if appropriate, resentencing.

District Judge Cardone dissented because she believes the district court made a sufficiently specific finding as to drug quantity during Rodriguez's original sentencing hearing that renders him ineligible for a reduced sentence under § 3582(c)(2).

## COUNSEL

Jason Hitt (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; McGregor Scott, United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellant.

John P. Balazs (argued), Sacramento, California, for Defendant-Appellee.

**OPINION**

BERZON, Circuit Judge:

Our central question is whether uncontested drug quantities in a court-adopted presentence investigation report ("PSR") constitute specific drug quantity findings that bind district courts in subsequent 18 U.S.C. § 3582(c)(2) sentence reduction proceedings. We clarify that, without an explicit and specific drug quantity finding by the original sentencing judge, drug quantities in an adopted PSR are not binding in § 3582(c)(2) proceedings.

We therefore reverse and remand to the district court for supplemental findings of drug quantity and, if appropriate, resentencing.

I

A

We begin with the statutory framework for deciding sentence reduction motions. Ordinarily, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has, however, provided a narrow exception to this rule of finality. A court may modify a defendant's term of imprisonment if the defendant was "sentenced . . . based on a sentencing range that has subsequently been lowered" pursuant to a retroactive amendment to the U.S. Sentencing Guidelines ("Guidelines"). *Id.* The purpose of this limited exception is to provide the defendant with "the benefit of later enacted adjustments to the judgments reflected in the [Sentencing] Guidelines" without engaging in plenary resentencing proceedings. *United States v. Mercado-Moreno*, 869 F.3d

942, 948 (9th Cir. 2017) (alteration in original) (quoting *Dillon v. United States*, 560 U.S. 817, 828 (2010)).

Section 3582(c)(2) sets forth a two-step inquiry for determining whether a defendant is entitled to sentence reduction. At the first step, the reviewing district court decides eligibility by determining whether a reduction is consistent with U.S. Sentencing Guidelines Manual § 1B1.10, the policy statement that implements § 3582(c)(2). *Dillon*, 560 U.S. at 826; *see also* 18 U.S.C. § 3582(c)(2). Section 1B1.10 permits a reduction if, but only if, the amendment has the "effect of lowering the defendant's applicable [G]uideline[s] range." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.10(a)(2)(B). A court determines whether the retroactive amendment lowered the defendant's Guidelines range by calculating the "amended [G]uideline[s] range that would have been applicable to the defendant if the [relevant amendment] to the [G]uidelines . . . had been in effect at the time the defendant was sentenced." *Id.* § 1B1.10(b)(1). Only "the relevant amendment for the 'corresponding guideline provisions . . . applied when the defendant was sentenced'" may be considered in the first step of the analysis, and the court "must 'leave all other guideline application decisions unaffected.'" *Mercado-Moreno*, 869 F.3d at 949 (quoting U.S.S.G. § 1B1.10(b)(1)).

A district court is generally prohibited from reducing a sentence if the reduction would place the defendant's term of imprisonment below the lower end of the amended Guidelines range. *See* U.S.S.G. § 1B1.10(b)(2)(A). The only exception is when the defendant's original term of imprisonment is below the Guidelines range because he or she received a reduction for substantially assisting

authorities and the revised term is comparably below the amended Guidelines range. *See id.* at § 1B1.10(b)(2)(B).[1]

At the second step, the court must consider all applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, "the authorized reduction is warranted, either in whole or in part." *Dillon*, 560 U.S. at 826; *see also* 18 U.S.C. § 3582(c)(2).[2] But the court's consideration of the § 3553(a) factors may not "serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Dillon*, 560 U.S. at 827.

B

The Guidelines use a drug quantity table, based on drug type and weight, to establish the base offense levels for drug-related offenses, with a maximum of level 38. *See* U.S.S.G. § 2D1.1(c). Amendment 782, adopted by the U.S. Sentencing Commission ("Commission") in 2014, modified the drug quantity table by reducing the base offense level for most drugs and quantities by two levels. U.S.S.G. supp. app. C. amend. 782 (Nov. 1, 2014). Shortly thereafter, the Commission made Amendment 782 retroactive for

---

[1] U.S.S.G. § 1B1.10(b)(2) is being challenged in a number of pending cases, *see, e.g.*, *United States v. Hernandez-Martinez*, No. 15-30309, et al. (9th Cir. Mar. 7, 2019), but is not challenged here.

[2] Section 3553(a)'s sentencing factors are "the nature and circumstances of the offense and the history and characteristics of the defendant"; the seriousness of the offense; respect for the law; just punishment; the values of deterrence; protection of the public; the opportunity for educational or vocational training; medical care or other treatment; the kinds of sentences available; the sentencing range; Guidelines policy statements; the avoidance of unwarranted sentence disparities; and the need for restitution to victims.

defendants, like Rodriguez, who had been sentenced before the change to the Guidelines. U.S.S.G. supp. app. C amend. 788 (Nov. 1, 2014). Pursuant to Amendment 782, the quantity of actual methamphetamine that triggers the maximum base offense level of 38 moved from 1.5 kilograms to 4.5 kilograms. *See* U.S.S.G. § 2D1.1(a)(5), (c)(1).[3]

## II

### A

In 2011, the California Highway Patrol conducted a traffic stop of Emilio Huaracha Rodriguez, a suspected drug trafficker, in Sacramento County. A drug detection dog alerted to Rodriguez's vehicle, and a search revealed 11 pounds (roughly 4.9 kilograms or 4,989 grams) of methamphetamine. After a search of Rodriguez's vehicle, law enforcement officers obtained a search warrant for his apartment. There, the officers found an additional quantity of methamphetamine and various types of drug paraphernalia. Rodriguez was charged with one count of possession with intent to distribute over 500 grams of methamphetamine mixture or substance, in violation of 21 U.S.C. § 841(a)(1).

---

[3] For certain types of drugs, such as methamphetamine, the drug quantity table permits a finding of either the entire weight of the mixture or substance containing the drug or the actual weight of the drug itself contained in a mixture or substance. *See* U.S.S.G. § 2D1.1(c) notes to drug quantity table (B). The sentencing judge is required to use whichever quantity corresponds to the higher offense level. *Id.* At the time of Rodriguez's sentencing, base offense level 38 was triggered by a finding of either: (1) 15 kilograms or more of methamphetamine mixture; or (2) 1.5 kilograms or more of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c)(1) (2012).

In January 2012, Rodriguez pleaded guilty pursuant to a written plea agreement. As the factual basis for his guilty plea, Rodriguez admitted to "knowingly possess[ing] over 500 grams of a mixture or substance that contained a detectable amount of methamphetamine . . . with the intent to deliver it to another person" and further stipulated to the maximum base offense level of 38. The factual basis also specified that law enforcement seized 11 pounds of methamphetamine from Rodriguez's vehicle and that the methamphetamine "was laboratory tested and found to contain over 1,500 grams of actual methamphetamine." At his plea colloquy, Rodriguez confirmed that "each and every fact" in the factual basis was "true and correct."

The PSR prepared for Rodriguez's sentencing stated that he "possessed approximately 4.8 kilograms of methamphetamine (actual) in his vehicle" and "186 grams of a mixture of methamphetamine at his residence."[4] Because the amount of methamphetamine mixture in his residence was a relatively small quantity, the PSR disregarded it for purposes of calculating his base offense level. On the basis of the quantity of methamphetamine in his vehicle alone, which "involved 1.5 kilograms or more of methamphetamine (actual)," the PSR recommended the highest base offense level for drug-related offenses, level 38. The PSR further determined that Rodriguez had a Category II criminal history, *see* U.S.S.G. § 4A1.1, and recommended a three-level reduction for accepting responsibility and cooperating with authorities. The PSR calculations yielded a

---

[4] The Guidelines instruct that a pound is converted to 0.4536 kilograms or 453.6 grams. *See* U.S.S.G. § 2D1.1 cmt. n.8(D). Therefore, the PSR incorrectly converts 11 pounds into 4.8 kilograms, and the correct conversion is 4.9 kilograms.

total offense level of 35 and a Guidelines range of 188 to 235 months imprisonment.

Rodriguez's sole objection to the PSR, lodged before sentencing, was that the PSR overstated his criminal history. Neither Rodriguez nor the government contested the PSR's findings regarding the quantity of methamphetamine attributable to Rodriguez.

At sentencing, the judge concluded that the PSR did overstate Rodriguez's criminal history and so departed slightly from the recommended Guidelines range, imposing a sentence commensurate with a Category I criminal history. *See* U.S.S.G. § 4A1.3(b). Aside from that slight departure, the sentencing judge "agree[d] with the justifications set forth in the [PSR]."[5] Rodriguez was sentenced to 168 months imprisonment.

B

In May 2016, Rodriguez filed a pro se § 3582(c)(2) sentence reduction motion. The motion was assigned to his original sentencing judge. The following year, with the assistance of later-appointed counsel, Rodriguez filed an amended motion for sentence reduction. Rodriguez seeks to reduce his base offense level from 38 to 36, the level corresponding to 1.5 kilograms of methamphetamine under Amendment 782, which after the three-level reduction from

---

[5] It is unclear from the district court's oral statement whether it adopted the PSR in its entirety or whether it just agreed with its "justifications." We note, however, that the sealed Statement of Reasons, signed by the sentencing judge, has a checked box for "The court adopts the presentence investigation report without change."

original sentencing would result in a total offense level of 33.

At Rodriguez's sentence reduction hearing in May 2017, the district court assumed that he had generally adopted the findings in Rodriguez's PSR at the original sentencing hearing. The government argued that the uncontested drug quantities used in the calculations in Rodriguez's PSR, 4.8 kilograms and 186 grams of methamphetamine, controlled. Consequently, the government maintained, Rodriguez was ineligible for sentence reduction under § 3582(c)(2), because the PSR's drug quantity would not lower Rodriguez's Guidelines range. Rodriguez argued to the contrary—that the *only* finding at the original sentencing hearing was that he possessed *at least* 1.5 kilograms of methamphetamine, which is not a finding as to a drug quantity that makes Rodriguez ineligible for sentence reduction.

The district court accepted Rodriguez's argument, agreeing that it had not made a disqualifying drug quantity finding at the original sentencing by adopting the PSR's findings. The court concluded that Rodriguez was eligible for § 3582(c)(2) sentence reduction and reduced Rodriguez's sentence from 168 months to 151 months. In so ruling, the court did not engage in supplemental fact-finding to determine the drug quantity actually attributable to Rodriguez. The government's appeal followed.

## III

We review a district court's § 3582(c)(2) sentence reduction decision for abuse of discretion. *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013). "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of

material fact." *United States v. Sprague*, 135 F.3d 1301, 1304 (9th Cir. 1998) (quoting *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir. 1992)).

The government makes two arguments on appeal. First, it contends that the uncontested drug quantities in Rodriguez's court-adopted PSR are binding drug quantity findings for purposes of § 3582(c)(2), and that those quantities render Rodriguez ineligible for a sentence reduction. Second, the government maintains that the district court was required to determine whether Rodriguez is more likely than not responsible for a drug quantity that meets the new quantity threshold under Amendment 782. We address each argument in turn.

A

Relying on our decision in *Mercado-Moreno*, the government argues that the drug quantities in Rodriguez's PSR—4.8 kilograms of methamphetamine from his vehicle and 186 grams of methamphetamine mixture from his residence—were binding on the district court in considering Rodriguez's § 3582(c)(2) sentence reduction motion. Based on this understanding, the government contends that Rodriguez is ineligible for a sentence reduction at the first step of the inquiry, as the PSR's drug quantities generate the same base offense level under Amendment 782 as previously, and thus would not have the effect of lowering his Guidelines range.

The government's reading of *Mercado-Moreno* is flawed. A close reading of that opinion compels the opposite conclusion. Under *Mercado-Moreno*, drug quantities in a generically adopted PSR are not binding on district courts in subsequent § 3582(c)(2) proceedings.

1

Mercado-Moreno was charged with one count of conspiring to manufacture and distribute 50 grams or more of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846. *Mercado-Moreno*, 869 F.3d at 950. He pleaded guilty to the charges pursuant to a written plea agreement. The factual basis in the written agreement stipulated that Mercado-Moreno had distributed more than 4,376.1 grams (4.3 kilograms) of actual methamphetamine in furtherance of the conspiracy. *Id.* The agreement's factual basis also specified that Mercado-Moreno managed others in the manufacture of methamphetamine but did not provide a specific quantity of methamphetamine manufactured. *Id.* At his plea colloquy, Mercado-Moreno affirmed the factual basis for his plea. *Id.*

The PSR prepared for Mercado-Moreno's sentencing asserted that law enforcement had seized 40 pounds (roughly 18 kilograms) of methamphetamine solution from his laboratory. *Id.* at 951. Mercado-Moreno did not contest this factual assertion (or any other) in the PSR. *Id.* The sentencing judge adopted the PSR in its entirety. *Id.* The sentencing judge also specifically found that Mercado-Moreno had "*distributed* 4.2 kilograms of actual methamphetamine during the course of the conspiracy"[6] but, despite the undisputed factual assertion in the PSR that Mercado-Moreno manufactured roughly 18 kilograms of methamphetamine, did not make a specific finding as to the "precise quantity of actual methamphetamine . . .

---

[6] The sentencing judge's finding of 4.2 kilograms, as opposed to 4.3 kilograms, was, Mercado-Moreno conceded, a typographical error. *Mercado-Moreno*, 869 F.3d at 951. As this error is not pertinent to our analysis, we do not discuss further *Mercado-Moreno*'s treatment of it.

*manufactured*." *Id.* at 948, 951–52. Mercado-Moreno was sentenced to a 210-month term of imprisonment. *Id.* at 952.

Mercado-Moreno filed a § 3582(c)(2) sentence reduction motion after Amendment 782 was made retroactive. In calculating the amended Guidelines range, the district court used both Mercado-Moreno's stipulation in his plea agreement that he had possessed more than 4.3 kilograms of methamphetamine *and* the uncontested 18 kilograms of manufactured methamphetamine described in the original PSR (and tested via a chemical analysis report presented to the court). *Id.* at 952. Because Amendment 782 would not lower Mercado-Moreno's Guidelines range using that calculation, the district court denied the § 3582(c)(2) motion for sentence reduction at the first step of the inquiry. *Id.* at 953.

Mercado-Moreno appealed to this court, arguing that (1) § 3582(c)(2) does not permit district courts to redetermine the drug quantity found at original sentencing; and (2) the district court erred in making supplemental findings as to drug quantity without a hearing. *Id.* Ruling on these contentions, *Mercado-Moreno* clarified, as relevant here, the circumstances in which drug quantities from the original sentencing are binding in later § 3582(c)(2) proceedings, and also provided a framework for making supplemental findings as to drug quantity.

First, *Mercado-Moreno* instructed that a drug quantity is binding at the initial step—whether the amendment lowered defendant's Guidelines range—in only two circumstances: (1) where "the sentencing court made a *specific* finding regarding the total quantity of drugs for which the defendant was responsible," or (2) where "the defendant admitted to a *specific* total quantity." *Id.* at 957 (emphases added).

Second, *Mercado-Moreno* clarified that, if the prior drug quantity finding at original sentencing is ambiguous or incomplete, a district court in § 3582(c)(2) proceedings may need to make supplemental findings of drug quantity. *Id*. A finding is ambiguous or incomplete if, for example, the sentencing judge "attributed a range of quantities (such as 'at least X kilograms') to the defendant," or "quantified only part of the amount for which [d]efendant was responsible, without making a specific finding as to the rest." *Id.* at 954.

In making supplemental findings of drug quantity, *Mercado-Moreno* instructed, "the district court may consider . . . 'the trial transcript, the sentencing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted.'" *Id.* at 957 (quoting *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012)). With specific regard to factual assertions in a PSR, *Mercado-Moreno* clarified that courts "may accept as true any facts in a PSR that the defendant did not object to at the time of sentencing." *Id.* The only restriction on supplemental findings is that they "may not be inconsistent with any factual determinations made by the original sentencing court." *Id.*

Notably, a district court's potential reliance on a generic adoption of a PSR—as opposed to reliance on a specific finding of a drug quantity by the district court—is discussed and sanctioned only in the section of *Mercado-Moreno* pertaining to supplemental fact-finding. The portion of the opinion pertaining to determining whether prior findings or admissions are binding at the first step of the inquiry does not suggest that reliance on a generic adoption of a PSR suffices for that purpose.

Applying this framework for § 3582(c)(2) proceedings, *Mercado-Moreno* held that (1) Mercado-Moreno stipulated

only to distributing *more than* 4,376.1 grams of methamphetamine, not to a specific quantity, *id.* at 958 and (2) "the original sentencing court did not make *any* findings regarding the amount of manufactured methamphetamine attributable to Defendant, [so] it was necessary for the district court to make those supplemental findings in order to rule on Defendant's later motion." *Id.* at 959 (emphasis added). By so holding, *Mercado-Moreno* necessarily determined that the uncontested statement in Mercado-Moreno's court-adopted PSR concerning the amount of methamphetamine manufactured was *not* a binding finding of drug quantity under § 3582(c)(2). Rather, *Mercado-Moreno* confirmed that only a "*specific* finding" regarding drug quantity, *id.* at 957 (emphasis added), is preclusive at the first step of the inquiry; uncontested facts in a generically adopted PSR do not constitute specific findings and are thus nonbinding in subsequent § 3582(c)(2) proceedings. *Id.*

2

As the above recounting demonstrates, *Mercado-Moreno* instructs that drug quantities alluded to in the original sentencing are binding in a § 3582(c)(2) proceeding only if (1) the sentencing judge made a specific finding of drug quantity or (2) the defendant admitted to a specific quantity. *Id.* at 957. A sentencing judge's generic adoption of a PSR (or an adoption of its justifications) does not fall into either category. We therefore decline, as *Mercado-Moreno* instructs, to transform statements of generic adoption of a PSR into binding, specific determinations as to particular drug quantities.

Notably, *Mercado-Moreno* concluded that the government had not waived its argument for a higher drug quantity finding by failing to object at the original sentencing, because it did not have an incentive to prove a

higher amount at the time and did not "knowingly relinquish[] the unforeseeable necessity to argue a higher amount later on." *Id.* at 959 n.9. Similarly, in many instances, the PSR's account of drug quantity will not affect the defendant's Guidelines range, providing little incentive to the defendant to contest the asserted amount or to the sentencing judge to focus on whether the PSR's asserted amount is accurate.

The district court's ruling now before us reflects this dynamic. The district court apparently did not view the earlier generic adoption of the PSR as a ruling on the specific quantity of drugs Rodriguez possessed, presumably because it had no reason to focus on the precise quantity at the time.

To be clear, we do not suggest that judges are required at the original sentencing to make findings of drug quantity beyond what is required to determine the applicable Guidelines range at the time. To the contrary, sentencing judges may make general findings of drug quantity by adopting the PSRs. In some instances, such a general adoption of the findings will be preferable, particularly where a defendant admits to a general drug quantity that meets the threshold for a Guidelines base offense level and any plausible specific finding would not alter that level. In that circumstance, any specific finding could be superfluous to the sentencing result.[7] It is always possible, of course, that, as here, the Guidelines drug quantity threshold could be

---

[7] In some instances, sentencing judges will, in fact, focus on the accuracy of an asserted drug quantity in a PSR—for example, sentencing judges may need to assure the accuracy of the PSR when contemplating an upward variance. In that circumstance, the judge will want to ensure that the basis for such a variance is accurate, and is likely to make a finding as to the specific drug quantity involved, even if the specific amount is not determinative of the Guidelines range.

altered after the original sentencing. But there is no need routinely to anticipate that possibility—which may never come to pass—in the original sentencing proceeding. As we shall explain, supplemental fact-findings as part of any future § 3582(c)(2) proceedings are available and suffice.

B

Applying *Mercado-Moreno* to Rodriguez, we conclude that neither required circumstance for a binding determination occurred. The sentencing judge at the initial sentencing did not make a specific finding of drug quantity, and Rodriguez did not admit to a specific drug quantity beyond the quantity necessary to determine the appropriate Guidelines range.[8]

Under *Mercado-Moreno*, the drug quantities in the court-adopted PSR—4.8 kilograms of methamphetamine and 186 grams of methamphetamine mixture—do not constitute specific drug quantity findings and so are not binding for purposes of applying § 3582(c)(2). Accordingly, there were no binding drug quantity findings or admissions

---

[8] Rodriguez stipulated in his plea agreement that law enforcement officers seized 11 pounds (roughly 4.9 kilograms, but erroneously calculated as 4.8 kilograms in the PSR) of methamphetamine from his vehicle. His stipulation as to what was seized from his vehicle is not tantamount to a specific admission of drug possession with intent to distribute. *See, e.g.*, *United States v. Espinoza*, 880 F.3d 506 (2018) (reversing a conviction for importing a controlled substance because the district court erred in excluding evidence supporting defendant's theory that, when she crossed the border, she was unaware of the drugs in her car, which would negate the applicable mens rea). The government appears to so recognize, and does not argue that Rodriguez made a binding, specific admission of drug quantity. Instead, the government relies only on the uncontested PSR, which did assert that Rodriguez possessed the 4.8 kilograms found in his vehicle.

of a specific quantity at Rodriguez's original sentencing that bound the district court at the later § 3582(c)(2) proceedings.

C

The government further contends that the district court should have determined whether the drug quantity attributable to Rodriguez satisfied the new drug quantity threshold for offense base level 38 under Amendment 782. On that point, we agree with the government.

As we have explained, § 3582(c)(2) established a two-step inquiry for determining whether a defendant is entitled to a sentence reduction. The first step, which determines eligibility, requires the district court to determine whether the Amendment invoked has the "effect of lowering the defendant's applicable [G]uideline[s] range." U.S.S.G. § 1B1.10(a)(2)(B). This step necessarily requires a finding of the drug quantity attributable to the defendant sufficient to "determine whether the defendant is more likely than not responsible for the new quantity threshold under the retroactive Guidelines amendment." *Mercado-Moreno*, 869 F.3d at 957. Without such a finding, there is no way for a district court to determine whether the amendment would lower the defendant's Guidelines range.

If the district court at the original sentencing did not make a specific drug quantity finding, as we have concluded in this situation here, the proper course is for the district court to engage in supplemental fact-finding to determine whether the defendant is eligible for a sentence reduction under § 3582(c)(2). *Id.* At that stage, as *Mercado-Moreno* explained, the district court *may* take into account the drug quantity attributed to the defendant in a court-adopted PSR, as well as the trial and sentencing transcripts. *Id.*

Here, the district court concluded that no specific findings of drug quantity had been made at the original sentencing. But then, instead of conducting supplemental fact-finding and determining whether the drug quantity attributable to Rodriguez meets the new quantity threshold for the Guidelines range, the district court simply granted Rodriguez's § 3582(c)(2) sentence reduction motion. The district court erred in doing so. It was required first to determine whether Rodriguez was more likely than not responsible for a drug quantity that meets Amendment 782's quantity threshold.

IV

We **REVERSE** and **REMAND** for further proceedings consistent with the opinion.

---

CARDONE, District Judge, dissenting:

Because I believe the district court made a sufficiently specific finding as to drug quantity during Rodriguez's original sentencing hearing that renders Rodriguez ineligible for a reduced sentence under 18 U.S.C. § 3582(c)(2), I respectfully dissent.

Under *Mercado-Moreno*, "[i]f the record reflects that the sentencing court made a specific finding regarding the total quantity of drugs for which the defendant was responsible, . . . then the district court must use that quantity and determine whether applying the retroactive amendment would lower the defendant's guideline range." *United States v. Mercado-Moreno*, 869 F.3d 942, 957 (9th Cir. 2017). If, on the other hand, "the sentencing court's quantity finding was ambiguous or incomplete, the district court may need to

make additional findings of drug quantity to determine the defendant's eligibility for a sentence reduction." *Id.*

The *Mercado-Moreno* court decided the sentencing court's quantity finding was incomplete because it had "only determined the quantity of actual methamphetamine [the defendant] had distributed"—4.3 kilograms—without making any finding regarding the quantity of methamphetamine the defendant was responsible for manufacturing. *Id.* at 958. And, because Amendment 782 would have lowered the defendant's base offense level only if the quantity of actual methamphetamine attributable to the defendant was less than 4.5 kilograms, it was necessary for the district court to make supplemental findings as to the quantity of manufactured methamphetamine before it could decide whether the defendant was eligible for a sentence reduction. *Id.* at 958–59; *see* U.S.S.G. supp. app. C, amend. 782 (Nov. 1, 2014).

In this case, the record shows that the sentencing court made a specific finding regarding the total quantity of methamphetamine for which Rodriguez was responsible. The district court reviewed the presentence investigation report ("PSR") prepared by the probation department prior to sentencing Rodriguez. Paragraph 11 of the PSR calculated Rodriguez's base offense level under the Guidelines. It provided in part,

> the defendant possessed approximately 4.8 kilograms of methamphetamine (actual) in his vehicle. He also had 186 grams of a mixture of methamphetamine at his residence. While the overall conspiracy involved much larger quantities of methamphetamine, the defendant's relevant conduct is limited to these amounts. USSG

> 2D1.1(c)(1) establishes a base offense level of 38, the highest available under USSG 2D1.1, if the offense involved 1.5 kilograms or more of methamphetamine (actual). Since the defendant possessed 4.8 kilograms of methamphetamine (actual) in his vehicle, the 186 grams of methamphetamine mixture is of such a small quantity that it will not be included, as it will not affect the guideline computation. A base offense level of 38 is recommended.

At sentencing, neither Rodriguez nor the government objected to the drug quantities listed in the PSR. The judge stated that he "agree[d] with the justifications set forth in the presentence report" and adopted the PSR's recommended base offense level. The PSR's only justification for its base offense level was that Rodriguez "possessed approximately 4.8 kilograms of methamphetamine (actual)." By explicitly relying upon the PSR's justification, the sentencing judge necessarily determined that Rodriguez was responsible for the 4.8 kilograms of methamphetamine (actual) before imposing the original sentence.

Thus, when subsequently considering Rodriguez's eligibility for a sentencing reduction, I believe the district court was bound to use the 4.8 kilograms. And, because this still triggers the maximum base offense level of 38, Amendment 782 does not lower Rodriguez's Guideline range and he is ineligible for a sentence reduction. *See* U.S.S.G. supp. app. C, amend. 782 (Nov. 1, 2014); *Mercado-Moreno*, 869 F.3d at 957. I would therefore reverse the district court's order reducing Rodriguez's sentence.